James Edward FLOURNOY, Appellant,

v.

The STATE of Texas, Appellee.

No. 61859.

Court of Criminal Appeals of Texas,
Panel 2.

Nov. 21, 1979.

Norman Maples, Fort Worth, Ronald L. Goranson (on appeal only), Dallas, for appellant.

Tim Curry, Dist. Atty., William Kane and J. R. Molina, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, PHILLIPS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

This is an appeal from an order revoking probation and concomitant sentence to confinement for the offense of forgery by passing. Because an inordinate number of similar appeals are being brought to the Court, we have determined to review here important concepts that are at work in a probation revocation proceeding. To revisit them now, in the context of this matter, reminds us all of the rather limited scope of review available in this Court in an appeal against an order of a trial court revoking probation.

First, the factual setting: Four years and some seven months after being placed on probation for a five year period, appellant was arrested and charged with aggravated assault. When that occurrence came to the attention of his probation officer, he read an offense report concerning it and then put in motion the revocation procedures.[1] The motion to revoke alleged a violation of four conditions:

> That he commit no offense, by committing the aggravated assault;
>
> That he report as directed, by failing to report during identified months;
>
> That he pay a probation fee in a stated amount per month, by failing to pay it for identified months:
>
> That he make restitution in a stated amount per month, by failing to pay it for identified months.

During the course of the hearing on its motion the State waived the first alleged violation. At the end of the hearing the trial court pronounced its findings that appellant had violated the other three condi-

---

1. The testimony of the probation officer to this effect is not inconsistent with the gratuitous statements of the judge of the trial court following it: "I am the one that either says that a petition for revocation shall be filed or shall not be filed. . . . I will tell you this, that where a defendant gets behind financially as this man has, more than likely—and the . . customary procedure, is that I file a petition to revoke his probation before the probation is up. . . . This is a procedure that the Court brings itself, not a procedure that this man or the Probation Office brings. I am the one that brings it. *This is between me and the probationer.* That is the way our procedure follows." (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

tions in particularized respects, and continued the cause for subsequent sentencing. On the later setting the trial court first announced it was reforming the judgment to *eliminate* the allegations and its findings with respect to failure to make payments of the probation fee and for restitution.[2] Thus, the order revoking probation is based *solely* on findings of failure to report during two months in 1974, three months in 1975, three months in 1976 and January 1978, and in the face of undisputed reporting as required in every month thereafter through September 1978.

Second, the legal backdrop: Almost from the occasion of its first being stated in *Baker v. State*, 151 Tex.Cr.R. 454, 209 S.W.2d 769 (1948), that granting probation—in a nonjury trial—"rests entirely within the sound discretion of the trial court" has become axiomatic.[3] Exercise of that discretion is "absolute and unreviewable," *Saldana v. State*, 493 S.W.2d 778 (Tex. Cr.App.1973). When probation is granted, the trial court "extends clemency" and creates a relationship that is, "in a way, contractual—that is, the court agrees with the convict that clemency by way of probation will be extended if he will keep and perform certain requirements and conditions, the violation of which will authorize the revocation of the probation," *Wilson v. State*, 156 Tex.Cr.R. ·228, 240 S.W.2d 774,

775 (1951), *Gossett v. State*, 162 Tex.Cr.R. 52, 282 S.W.2d 59, 60 (1955),[4] *Bradley v. State*, 564 S.W.2d 727, 729 (1978).[5] Unlike most contracts, however, terms and conditions of a probation pact are subject to unilateral modification by the trial court, Article 42.12, Section 6, V.A.C.C.P.[6] Furthermore, the trial court may initiate an examination of contractual compliance or violation on the part of the probationer by causing his arrest and requiring his appearance at a hearing to revoke the agreement, Section 8(a), *ibid.* Amid trappings of due process protections, *Whisenant v. State*, 557 S.W.2d 102, 104–105 (Tex.Cr.App.1977), upon conclusion of the hearing, the trial court "may either continue, modify, or revoke the probation," *id.*

Noteworthy is that in providing the three alternative courses of action the Legislature made not the slightest suggestion of standards or guidelines to inform the discretion of the trial court, as it did in empowering the original grant of probation.[7]

Third, the evidentiary concept: Due process considerations dictate, *inter alia*,[8] that some reasonable measure be used to test sufficiency of evidence adduced to support allegations of violations and the findings thereon. After some experience in dealing with the problem, this Court adopted a preponderance of the evidence degree of proof in *Scamardo v. State*, 517 S.W.2d

---

2. The trial court explained, "I am in agreement with you [*defense counsel*] about mistakes being made and I'm going to disregard that allegation in the petition and the judgment will be reformed at this time. I will strike the findings of facts and conclusions of law at the time the probated sentence was revoked with reference to paragraph three . . . alleging non-payment."

3. That discretion is to be informed, however, by "satisfaction . . . that the ends of justice and the best interests of the public as well as the defendant will be subserved thereby," Article 42.12, Section 3, V.A.C.C.P.

4. "The clemency extended by the court is upon conditions contractual in nature, the.probationer accepting the clemency under the conditions imposed."

5. "The relationship between the probationer and the court is contractual in nature."

6. "The court having jurisdiction of the case . . . may, at any time, during the period of probation alter or modify the conditions . ."

7. See note 3, *supra.*

8. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), *Gagnon v. Scarpelli*, 411 U.S. 778, 785, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656: "Both the probationer . . . and the State have interests in the accurate finding of fact and the informed use of discretion—the probationer . . . to insure that his liberty is not unjustifiably taken away and the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community."

293, 297–298 (Tex.Cr.App.1974),[9] and has continued to adhere to that measure, e. g., *Keel v. State*, 544 S.W.2d 151 (Tex.Cr.App. 1976), declining to reexamine it as recently as *Williams v. State*, 586 S.W.2d 883 (Tex. Cr.App.1979).

■ Here, relying on the doctrine announced in *Hartsfield v. State*, 523 S.W.2d 683, 685 (Tex.Cr.App.1975) and followed in *Davis v. State*, 563 S.W.2d 264, 266 (Tex.Cr. App.1978),[10] appellant points to testimony that five probation officers serviced Tarrant County probationers. But, as the State points out and the record otherwise shows, appellant concedes missing January 1978 and "a few times" before then. While his concessions are not, perhaps, as strong as *Greathouse v. State*, 491 S.W.2d 149 (Tex.Cr.App.1973), cited by the State in its brief, the evidence as a whole is ample enough to preponderate in favor of and to support the findings of the trial court. *Espinoza v. State*, 486 S.W.2d 315 (Tex.Cr. App.1972), *Barber v. State*, 486 S.W.2d 352, 354 (Tex.Cr.App.1972), *Carnes v. State*, 478 S.W.2d 940 (Tex.Cr.App.1972); see *Isabell v. State*, 494 S.W.2d 572, 573 (Tex.Cr.App. 1973). Thus, as an evidentiary matter, a violation of a condition of probation has been shown with the sufficiency required by due process protections.

■ Fourth, the discretionary concept: Still, though it be satisfactorily proven that one or more conditions of probation have been violated,[11] the three statutory alternatives of continuation, modification or revocation of probation remain for the trial court to determine—again, in its discretion. *Wallace v. State*, 575 S.W.2d 512 (Tex.Cr. App.1979), *Beckworth v. State*, 551 S.W.2d 414, 416[12] (Tex.Cr.App.1977), *Barber v. State*, 486 S.W.2d 352, 354[13] (Tex.Cr.App. 1972), *Kelly v. State*, 483 S.W.2d 467, 471 (Tex.Cr.App.1972) (Concurring opinion), *Gossett v. State*, 162 Tex.Cr.R. 52, 282 S.W.2d 59, 60 (Tex.Cr.App.1955), *Dunn v. State*, 159 Tex.Cr.R. 520, 265 S.W.2d 589, 591 (Tex.Cr.App.1954). While it has been said that "a trial judge is not accorded absolute discretion in the decision *to revoke*," *Scamardo v. State*, *supra*, 517 S.W.2d at 297, that statement is usually made in a context of some evidentiary or procedural shortcoming, just as it was in *Scamardo*, in *Wester v. State*, 542 S.W.2d 403, 405–406 (Tex.Cr.App.1976), in *Franco v. State*, 552 S.W.2d 142 (Tex.Cr.App.1977) and many similar cases.

■ Yet, when the finding of a violation of a condition of probation is supported by a preponderance of the evidence and procedural problems are not raised, the discretion of the trial court to choose the alternative of revocation is at least substantially absolute. That decision by the trial court . is made by one who is on the scene, so to speak, who more often than not entered into the contract of probation with the accused,[14] who had one or more contacts with or reports concerning the probationer, who observed the probationer during court appearances—in short, one who is more intimately familiar with the probationer than we who have only a dim profile drawn from

9. That is, "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation."

10. Probation office records offered to show failure to report as directed may not be sufficient when the record does not show whether the probationer reported to some other probation officer during the months in question.

11. Having found sufficient proof of the violation, we are not presented here with the question of an abuse of discretion in revoking probation on less than a preponderance of the evidence, as in *Battle v. State*, 571 S.W.2d 20, 22 (Tex.Cr.App.1978).

12. "There was sufficient evidence for the trial judge to conclude that the appellant had broken the contract he made with the court . . . [so] . . . the trial judge did not abuse his discretion by entering the order revoking appellant's probation."

13. "A hearing upon a motion to revoke probation is addressed to the trial court's discretion in determining whether the probation shall be revoked or continued."

14. As the trial court below remarked, "This is between me and the probationer," see note 1, *supra*.

a cold record before us. Thus, it is made in unique circumstances that truly are not susceptible to duplication on appeal.

This Court, therefore, early on adopted and regularly applies the credo: "The only question legitimately before this Court on a probation revocation proceeding is whether or not there was an abuse of discretion in the trial court," *Isabell v. State*, 494 S.W.2d 572, 573–574 (Tex.Cr.App.1973). When the proceedings are regular and the violation is properly proven, the question answers itself. We simply are not likely to substitute the collective judgment of members of the Court for the exquisite exercise of discretion by the trial court—as indeed we should not.[15]

■■■ Thus, though in this case some may reasonably believe it unfair to withdraw probation for failure to report on occasions scattered back over a period of four years, after all other allegations of misconduct were not sustained for one reason or another, the fact is that the motion to revoke, apparently triggered by the aggravated assault charge and arrest, was filed within five or six weeks.[16] We have not had pointed out to us, nor have we found, any prohibition against a motion to revoke probation alleging every known purported violation occurring within the probationary period. To the contrary, Article 42.12, Section 8, V.A.C.C.P., expressly provides, "*At any time during the period of probation* the court may issue a warrant for violation of *any of the conditions* of the probation . . . .*,*" and a subsequent arrest on order of the court rendered within the period of probation is in conformity with that provision even though there is a delay in reporting the alleged violation to the court, *Miller v. State*, 168 Tex.Cr.R. 570, 330 S.W.2d 466, 469 (1959) and *Bobo v. State*, 479 S.W.2d 947, 949 (Tex.Cr.App.1972).[17] That first alleged violation was waived by the State and two others were not upheld by the court below do not preclude the trial court from revoking probation on the single allegation that was supported by a preponderance of the evidence, *Hilts v. State*, 476 S.W.2d 283, 284 (Tex.Cr.App.1972). However, whether the trial court should have done so on that violation alone is just such a matter of discretion that this Court will not disturb.

■■■ The allegations respecting failure to report as required having been sustained by a preponderance of the evidence, probation was susceptible of being revoked by the trial court. Procedures were otherwise regular.[18] In these circumstances this appeal, and many others just about like it, is practically an exercise in futility, for we simply

---

**15.** Of particular evaluation for the trial court in the exercise of discretion in cases such as this is the matter of justification or excuse advanced by a probationer for his failure or omission. Statements, as here, that the probationer did not report because "I didn't have the money or overlooked it;" as in *Beckworth v. State, supra,* that the probationer had disentangled himself from the root of his alcohol problems; as in *Craig v. State*, 586 S.W.2d 883 (Tex.Cr. App.1979) that rules of the Cenikor program, with which he had been directed to conform as a condition of probation, were too restrictive in his situation—those matters are better left solely to determination by the trial court in choosing the best alternative consequence of violating a condition of probation.

**16.** The motion alleges the assault was committed September 3, 1978, but elsewhere that date of September 23 is given; the motion was filed October 19, 1978 and served on appellant the following day.

**17.** The complaint here is not for denial of a speedy hearing once the motion to revoke is filed; the right to a swift adjudication after order for an arrest is no longer questioned, *Fariss v. Tipps*, 463 S.W.2d 176 (Tex.1971); *Hilts v. State*, 476 S.W.2d 283 (Tex.Cr.App. 1972); *McClure v. State*, 496 S.W.2d 588 (Tex. Cr.App.1973). Indeed, the constitutional requirement has been implemented legislatively by recent amendment providing a hearing within twenty days after a jailed probationer moves for one, Article 42.12, Section 8(a), V.A.C.C.P. Thus, the contention that delay from January 1978 until October 1978 in filing motion to revoke constitutes a violation of due process is without merit.

**18.** Appellant's contention that the trial court erred in denying his request to recall the probation officer just before the trial court was to pronounce sentence presents nothing for review for there was neither an offer of proof nor bill of exception indicating what testimony would have been adduced. *Ross v. State*, 523 S.W.2d 402, 404 (Tex.Cr.App.1975).

cannot say that the trial court abused its discretion in revoking rather than modifying or continuing probation.

The judgment is affirmed.

DOUGLAS, J., concurs in result.