11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Billy Dan Johnson

Appellant

Vs.                   Nos.
11-02-00159-CR & 11-02-00160-CR -- Appeals from Taylor County

State of Texas

Appellee

 

Billy Dan
Johnson appeals the revocation of his community supervision in two cases.  He was placed on community supervision in
the first case[1] in
1996, and he was placed on community supervision in the second case[2]
in 1999.  The trial court revoked his
community supervision in both cases on April 26, 2002, and sentenced him to
confinement for five years in the first case and to confinement for two years
in the second case.  The sentences are
concurrent.  We affirm.

                                                                Background
Facts

The first
indictment charged appellant with burglary of a building on August 31,
1994.  Pursuant to a plea bargain
agreement, appellant was convicted and sentenced on January 29, 1996, to confinement
for five years and a fine of $500.  The
fine has been paid.  The confinement was
suspended, and appellant was placed on community supervision for five years.
There was a motion to revoke community supervision in that case, and the period
of community supervision was extended for one year.  The new expiration date was January 29, 2002.  The current motion to revoke was filed on
October 5, 2001. 

The second
indictment charged appellant with possession of less than one gram of cocaine
on November 8, 1998.  Pursuant to a plea
bargain agreement, appellant was convicted and sentenced on January 15, 1999,
to confinement for two years.  No fine
was imposed.  The sentence was
suspended, and appellant was placed on community supervision for five years.








Both
motions for revocation were simultaneously heard.  There was a hearing on April 19, 2002, involving the alleged Atechnical violations@ and a hearing on April 26, 2002, concerning
appellant=s arrest on September 29, 2001, when he was
found to be in possession of .01 grams of cocaine.

                                                                   Points
of Error

Appellant
presents 6 points of error in the first case and 12 points of error in the
second case.  Point of Error No. 1 is
the same in both cases, and it reads in material part as shown:

The trial
court erred in overruling Appellant=s Motion to Suppress Illegally Seized Evidence.       

 

Appellant also argues in
each case that the trial court erred in making a finding of Atrue@ to the allegation that he knowingly possessed cocaine on September 29,
2001.  Our ruling on these three points Aaddresses every issue raised and necessary to
final disposition of the appeal.@  See TEX.R.APP.P. 47.1.  Consequently, the other issues will not be
discussed. 

                                                   The
Arrest on September 29, 2001

Sergeant
Shane Burks of the Abilene Police Department testified about his arrest of
appellant on September 29, 2001, at approximately 11:20 p.m.  Sergeant Burks identified appellant as the
man who was arrested.  Sergeant Burks
testified that he had been traveling west in the 5500 block of Lockheed Street
when he Asaw a van parked in the middle of the
roadway.@  The
van did not have any lights on it.  As
the patrol car approached it, the van Aquickly went in reverse, turned sharp, hit the south curb line of
Lockheed, [and] ran up over the curb.@  Sergeant Burks said that he
stopped the van because of what he had seen. 
Appellant was the only occupant of the van.  When appellant got out of the van to talk to the officer,
appellant Aseemed really nervous,@ and Astarted sweating profusely.@  When he checked for
outstanding warrants, the officer learned that appellant was on probation.  There were no outstanding warrants, and
Sergeant Burks gave appellant a verbal warning and told him that he was Afree to go.@  Sergeant Burks=s testimony on direct examination reads in
relevant part as shown:

Q:
Did you continue to visit with him?

 








A: Yes, sir, I did.  I asked if he wouldn=t mind talking with me further and asked if
he had anything illegal in the vehicle or if he had been doing anything illegal
that night.

 

Q: Based upon what you
observed?

 

A: Yes.

 

Q: What did he tell you,
if anything?

 

A: I don=t recall specifically.  When I asked him when was the last time
he used any drugs, he said about 30 minutes ago.  And I asked if he had anything illegal in his car and he said
no.  And I asked if he minded if I
looked in the car and he said no, go ahead.  (Emphasis added)

 

Sergeant
Burks also testified that appellant was wearing women=s lingerie and that appellant said several
times: APlease don=t take me to jail dressed like this.@  Sergeant Burks testified that
he found Aan off white rock like substance@ on the floor on the driver=s side of the van and that he also found a
silver Acrack pipe@ in appellant=s
vehicle. 

Officer
Craig Jordan of the Abilene Police Department testified that he came to the
scene of appellant=s
arrest, that he heard Sergeant Burks Afinishing his contact@ with appellant, and that he heard Sergeant Burks telling appellant
that he Awas going to give him a warning on the
parking violations and that he was free to go.@  Officer Jordan supported
Sergeant Burks=s testimony that appellant was free to leave
and that appellant gave consent for the search of his van.  

Officer
Roger Lambert of the Abilene Police Department testified that he came to the
scene of appellant=s
arrest on September 29 to do a preliminary field test on the substance which
was found in appellant=s
van.  He also testified that he took the
substance to the Department of Public Safety Laboratory.

William
Chandley testified that he is a chemist at the Department of Public Safety
Laboratory and that he tested and weighed the substance which was found at the
time of appellant=s
arrest.  It weighed .01 grams and
contained cocaine.  Chandley also
testified that the pipe found in appellant=s van was the kind used for Asmoking crack cocaine.@  








The only
other witness at the hearing on April 26 was appellant.  He testified that he was wearing regular
street clothes on the night of September 29 and that he never wore women=s underwear or lingerie.  Appellant testified that he was married,
that he and his wife had four children, and that he had one other child for
which he paid child support.  At the
time of his arrest, appellant had two jobs. 
He was a cook for Abuelos Restaurant, and he worked in the warehouse for
Independent Groceries.  Appellant=s testimony on direct examination reads in relevant
part as shown:

Q:   On September 29th when you were arrested
for possession of cocaine why were you parked at the end of that street?

 

A: Well, I
wasn=t really parked.  I ran into the street, a dead end street and I was backing up
when I stopped.  I stopped because my
car got like problems with - - it=s old and I don=t have the money to get it fixed. 
And when I got to the end of the street it cut out, it stopped.  So when I seen the headlights coming from
the other car I cranked it up and backed up and that is when he turned on his
lights.  I really wasn=t stopped. 
It just went dead.  It cuts out
on me when I come to a stop sign.  It
cuts outs.  I have problems with my car.

 

                                                            *   *  
*

 

Q: You
have heard the testimony about this evidence that they found in your van?

 

A: Yes.

 

Q: Did
that evidence belong to you?

 

A: No,
sir.

 

Q: Had
you been smoking crack?

 

A: Earlier.

 

Q: Did you
believe that...you had the right to leave?

 

A: He
never told me I could leave.

 

 

                                                            *   *  
*

 

Q: Did you
feel like you had freedom to leave?

 

A: No,
sir.

 








Q: Why
not?

 

A: Because
when the second officer pulled up they patted me down and searched me.  He said, ADo you have any drugs on you?@  I said, ANo. 
What=s the second officer for?@  He
said that is for protection, or whatever.

 

Q: Back
up?

 

A:
Yeah.  So then he asked me, ACould I search you?@ And I said, AYeah.@  And
he said, AWill you stay here while I search your car?@  And
I said, ASure.@

 

                                                            *   *  
*

 

Q: Did you
know that the items of evidence that have been admitted, did you know they were
in the car?

 

A: No,
sir.

 

                                                            *   *  
*

 

Q: So that
is why you told them to search it?

 

A:
Yes.  That is why I gave permission to
search the van.

 

                                             CROSS-EXAMINATION

 

Q: You
knew you weren=t
supposed to be smoking cocaine,
something you admitted you had done like 30 minutes before that, right?

 

A: I didn=t say 30 minutes before.  I said I smoked some earlier that day.  (Emphasis added)

 

                                                 Controlling
Authorities








The burden
of proof in a revocation proceeding is Aby a preponderance of the evidence.@  Jenkins v. State, 740 S.W.2d
435, 437 (Tex.Cr.App.1983).  The
decision as to whether community supervision should be revoked Arests in the discretion of the trial judge.@ 
Wester v. State, 542 S.W.2d 403, 405 (Tex.Cr.App.1976).  Proof that Aa condition of probation has been violated@ is sufficient to support the
revocation.  Taylor  v. State, 604 S.W.2d 175, 179
(Tex.Cr.App.1980).  The trial court
could believe all or any part of the testimony of any witness.  Garrett v. State, 619 S.W.2d 172, 174
(Tex.Cr.App.1981).  Appellate review of
an order revoking community supervision is limited to the issue of whether the
trial court abused its discretion. 
Flournoy v. State, 589 S.W.2d 705, 709 (Tex.Cr.App.1979).

The
testimony by Sergeant Burks supports the trial court=s ruling. 
There is no showing that the traffic stop was illegal.  The record shows that appellant gave
voluntary consent to the search of his vehicle and that the cocaine was found
in his vehicle.  Appellant admitted that
he had smoked cocaine earlier that day, and the trial court was not required to
believe appellant=s
claim that he did not know that cocaine was in his vehicle.  In any event, appellant had to have had
possession of cocaine earlier that day in order to smoke it, and this was a
violation of the terms of his community supervision.  The trial court did not abuse its discretion in granting the
State=s motions to revoke appellant=s community supervision.

The points
which have been discussed are overruled. 
Pursuant to Rule 47.1, the other points need not be discussed.

                                                                This
Court=s Ruling

The
judgments of the trial court are affirmed in both cases.

 

BOB
DICKENSON

SENIOR
JUSTICE

 

May 8, 2003

Do not publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of:  Arnot, C.J., and

Wright, J., and Dickenson, S.J.[3]











[1]This was Cause No. 18,037-A in the 42nd District Court
of Taylor County and Cause No. 11-02-00159-CR in this court.





[2]This was Cause No. 19,477-A in the 42nd District Court
of Taylor County and Cause No. 11-02-00160-CR in this court.





[3]Bob Dickenson, Retired Justice, Court of Appeals, 11th
District of Texas at Eastland sitting by assignment.