# NO. 12-09-00201-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CURTIS EDWARD COOK,*<br>*APPELLANT* | § | *APPEAL FROM THE 173RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Curtis Edward Cook appeals the adjudication of his guilt and revocation of his community supervision for aggravated sexual assault of a child. He raises four issues on appeal. We affirm.

## BACKGROUND

Appellant was charged by indictment in the January 2008 grand jury term in Henderson County, Texas, with the offense of aggravated sexual assault of a child; specifically, his twelve year old granddaughter. He negotiated a formal plea bargain, waived his right to trial by jury, and judicially confessed to committing the offense. On September, 29, 2008, he was placed on ten years of deferred adjudication community supervision.

On February 9, 2009, the State moved to adjudicate Appellant's guilt, alleging that Appellant had violated the terms and conditions of his community supervision. In its motion, the State alleged five violations of the terms and conditions of Appellant's community supervision. Specifically, counts one through five, respectively, alleged that Appellant failed to (1) register as a sex offender in Kaufman County, Texas, on or about January 20, 2009; (2) register as a sex offender in Henderson County, Texas, on or about January 11, 2009; (3) refrain from living within 1,000 feet of a location where children commonly gather; (4) obtain prior consent to any change of address; and (5) complete ten hours of community service per month.

Appellant pleaded "not true" to the allegations in the State's motion to adjudicate. After an evidentiary hearing on the State's motion, the trial court found count one to be "not true" and the remaining four counts to be "true." Based on these findings, the trial court proceeded to a determination of guilt and found Appellant guilty of the offense of indecency with a child. After a hearing, the trial court sentenced Appellant to thirty years of imprisonment.

## LEGAL SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant challenges the legal sufficiency of the evidence to support the revocation of his community supervision.

### Standard of Review and Applicable Law

The granting of community supervision is a contractual privilege afforded a defendant whereby the court agrees to extend clemency by granting community supervision in exchange for the defendant's agreement to abide by certain requirements. *Speth v. State*, 6 S.W.3d 530, 533-34 (Tex. Crim. App. 1999). A trial court has broad discretion to determine the terms and conditions of community supervision to be imposed. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 11(a) (Vernon Supp. 2010) ("The judge may impose any reasonable condition [of community supervision] that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant."); *Speth*, 6 S.W.3d at 533. This discretion includes the authority to order community service. TEX. CODE CRIM. PROC. ANN. art. 42.12, §§ 11(a)(10), 16 (Vernon Supp. 2010).

"At a hearing on an application to revoke [community supervision], guilt or innocence is not at issue, and the trial court need not determine the defendant's original criminal culpability, only whether the [defendant] broke the contract made with the trial court to receive [community supervision]." *Pierce v. State*, 113 S.W.3d 431, 436 (Tex. App.–Texarkana 2003, pet. ref'd).

In community supervision revocation cases, the state has the burden to establish by a preponderance of the evidence that the terms and conditions of community supervision have been violated. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). The preponderance of the evidence standard is met when the greater weight of the credible evidence before the trial court supports a reasonable belief that a condition of community supervision has been violated. *Rickels v. State*, 202 S.W.3d 759, 764 (Tex. Crim. App. 2006).

2

When the state has met its burden of proof and no procedural obstacle is raised, the decision whether to revoke community supervision is within the discretion of the trial court. *Flournoy v. State*, 589 S.W.2d 705, 708 (Tex. Crim. App. 1979). Thus, our review of the trial court's order revoking community supervision is limited to determining whether the trial court abused its discretion. *Caddell v. State*, 605 S.W.2d 275, 277 (Tex. Crim. App. 1980). When a trial court finds several violations of community supervision conditions, we affirm the revocation order if the proof of any single allegation is sufficient. *See Hart v. State*, 264 S.W.3d 364, 367 (Tex. App.–Eastland 2008, pet. ref'd); *Cochran v. State*, 78 S.W.3d 20, 28 (Tex. App.–Tyler 2002, no pet.).

Similar to the traditional legal sufficiency analysis, we view the evidence in the light most favorable to the trial court's decision to revoke. *Hart*, 264 S.W.3d at 367. Moreover, in a revocation proceeding, the trial judge is the sole trier of the facts, the credibility of the witnesses, and the weight to be given to witnesses' testimony. *Diaz v. State*, 516 S.W.2d 154, 156 (Tex. Crim. App. 1974); *Aguilar v. State*, 471 S.W.2d 58, 60 (Tex. Crim. App. 1971).

**Discussion**

Although he pleaded "not true" to all alleged violations of his community supervision, Appellant admits in his brief that the evidence is "technically sufficient" to support the trial court's conclusion that he violated his community service requirement.

The trial court's community supervision order required Appellant to "satisfactorily complete 1000 hours of Community Service Work at the rate of 10 (ten) hours each month beginning October, 2008. . . ." The record shows that Appellant completed sixteen hours in October, eight in November, zero in December, and eight in January. The State filed the motion to adjudicate guilt and to revoke Appellant's community supervision on February 9, 2009.

Donna Ward, Appellant's community supervision officer, testified that no more than eight hours of credit is granted per day. Moreover, Ward testified that the community supervision department does not permit monthly excess to be carried forward to the following month's obligation, but does allow any additional service to credit toward the total 1,000 hour obligation.

Appellant argues that enforcement of these "ad hoc" rules would violate the contract construction maxim that ambiguous contractual terms must be interpreted against the drafter. Consequently, Appellant contends that he need not actually perform ten hours each month.

3

Rather, under contract construction principles, he argues that so long as his total community service hours average at least ten hours per month, regardless of how many hours he completes in any given month, he is in compliance with the community service requirement. We need not address the merits of this argument, however, because Appellant fell short of his community service obligation under either measure.

Appellant failed to complete ten hours in November, December, and January, and consequently, he did not complete ten hours "each month." Alternatively, under his proposed measure, Appellant completed only thirty-two hours, and as of the date the State filed its motion to adjudicate Appellant's guilt, he was required to have completed forty hours to be in compliance. Therefore, under either construction of the community service obligation, the State's proof is sufficient to support the trial court's finding that Appellant fell below the required number of hours. *See Welch v. State*, No. 06-03-00068-CR, 2003 WL 22682595, at *1 (Tex. App.–Texarkana Nov. 14, 2003, no pet.) (mem. op., not designated for publication) (holding evidence sufficient to show defendant failed to complete community service hours by averaging less than ten hours per month at time revocation proceedings filed, though not foreclosing community supervision requirement that ten hours be completed each month).

Appellant nevertheless argues that the violation of the community service requirement was a mere technicality and not sufficiently serious to warrant adjudication of Appellant's guilt and revocation of his community supervision. "Courts may revoke community supervision for a violation of any condition, including violations of any single 'technical' condition." *Nurridin v. State*, 154 S.W.3d 920, 924 (Tex. App.–Dallas 2005, no pet.). Moreover, "[e]very condition of probation is important, and if not complied with, subjects the defendant to potential revocation." *Nicholas v. State*, No. 12-01-00102-CR, 2002 WL 253837, at *2 (Tex. App.–Tyler Feb. 20, 2002, no pet.) (mem. op., not designated for publication) (holding violation of community service hour requirement sufficient to warrant revocation). This includes the community service requirement. *Elizondo v. State*, 966 S.W.2d 671, 673 (Tex. App.–San Antonio 1998, no pet.).

Since the State's proof is sufficient to support revocation for at least one of Appellant's community supervision conditions, we need not examine the remaining alleged violations. The trial court did not abuse its discretion in revoking Appellant's community supervision. Appellant's first issue is overruled.

## FACTUAL SUFFICIENCY OF THE EVIDENCE

In his second issue, Appellant alleges that the evidence is factually insufficient to support the adjudication of his guilt and revocation of his community supervision. Factual sufficiency review is not available in an appeal from a revocation of community supervision. *See **Hart***, 264 S.W.3d at 367; *see also **Cochran***, 78 S.W.3d at 27 (implicitly holding factual sufficiency review unavailable in community supervision revocation cases). Appellant's second issue is overruled.

## EXCESSIVE SENTENCE RESULTING FROM INADMISSIBLE EVIDENCE

In his third issue, Appellant argues that "the trial court acted upon inadmissible evidence to sentence [Appellant] to an excessively long sentence, only 135 days after placing him on the lightest form of community supervision." The evidence of which Appellant complains consists of (1) a letter from his counselor describing extraneous sexual offenses with other victims, (2) testimony from a polygrapher that Appellant committed extraneous sexual offenses with the victim in this case and written admissions by Appellant confirming those acts, as well as (3) evidence received through ex parte communications with the trial court.

### The Evidence

Linda Young, a therapist, conducts a sex offender treatment program. The trial court assigned Appellant to Young's program. Appellant underwent twelve group sessions and approximately four to five individual sessions[1] before the State filed its motion to adjudicate his guilt and revoke his community supervision.

A letter drafted by Young was filed as part of the clerk's record on January 30, 2009, just prior to the State's filing its motion to adjudicate. In the letter, Young wrote that Appellant admitted to several extraneous sexual offenses with other victims. She also listed the results of his sexual arousal assessment (ABEL assessment). Finally, in her letter, Young wrote that Appellant "lied about his behavior," avoided treatment, failed to follow program rules, and is "grooming" his step-grandson. On May 4, 2009, during the punishment hearing, the trial court took judicial notice of its file; however, the letter was never specifically offered during Young's testimony, nor was any reference made to the extraneous offenses described in the letter.

---

[1] Young testified that she believed that there were four or five individual sessions, but upon further questioning, mentioned that she was not exactly sure how many sessions took place.

As an additional condition of Appellant's community supervision, he was required to submit to polygraph examinations. After Young testified, the trial court heard evidence from Andy Sheppard, a polygrapher. Sheppard testified that prior to taking an examination, Appellant admitted to several other extraneous sexual offenses with the victim in this case, and that Appellant signed written statements detailing those offenses. Sheppard's testimony and the written statements were initially admitted into evidence over Appellant's objection. The trial court then recessed the punishment hearing until May 27, 2009.

In the interim, on May 12, 2009, the State filed a letter in the trial court, in which the prosecutor stated that "[u]pon hearing some of the details of the sexual assault in [the] Curtis Cook case, the victim's family has requested and would like to have [Appellant] tested for STD's and Aids [sic]." The letter was not in the form of a motion and contained no certificate of service. The State does not contend that the letter was served upon Appellant or his counsel. Attached to the State's letter was a letter from the victim's mother to the trial judge and a proposed order. The victim's mother stated in the letter that she wanted Appellant tested for sexually transmitted diseases because on May 4, 2009, she had learned of other sexual acts allegedly committed by Appellant against the victim.[2] On May 13, 2009, without a hearing, the trial court signed an order for the test. The record does not disclose whether the test was ever administered or the results of any such test.

On May 27, 2009, the trial court continued the punishment hearing, at which time the State called Young as a witness for a second time. She testified that Appellant was not cooperative in his treatment program. After Young's testimony, Appellant and the State rested and presented argument on punishment.

**The Trial Court's Action**

Appellant contends that the court's admission of the Young letter and Sheppard's testimony, as well Appellant's written statements provided by Sheppard, constitute an *Estelle v. Smith* violation. *See generally Estelle v. Smith*, 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981) (holding that admission of psychiatrist's testimony violated Fifth Amendment where defendant was not advised of right to remain silent and that any statement he made could be used against him). Appellant further argues that the evidence received through the ex parte communications resulted in an impermissibly harsh sentence. However, we need not address

---

[2] May 4, 2009, was the date that Sheppard provided his testimony.

6

those issues.  The trial court initially admitted and heard the evidence. But when the punishment hearing resumed on May 27, 2009, the court ruled that it would not consider that evidence for any purpose.  Specifically, the trial court ruled as follows:

> I've thought about it since then.  And, you know, just to be honest, I'm not sure what the law is on whether those statements are considered -- would you know, come under Miranda or come under -- would be considered to be otherwise coerced, outside of any Miranda considerations.
>
> And, not knowing, I think that what the Court would prefer to do is err on the side of a defendant's constitutional rights.  So the Court is not going to consider statements made by defendant that would tend to incriminate him, made to counselors and polygraph examiners and so forth, that he was required to make as part of his probation.  The Court is not going to consider those statements either as evidence of the defendant's guilt or in assessing his punishment.

The State continued to argue that the evidence was admissible, and the trial court stated that "[y]ou may be right, . . . but I'm going to err the other way. . . ."  Consequently, the Young letter, Sheppard's testimony, and the written admissions provided by Sheppard were not considered by the trial court in sentencing Appellant.

Moreover, the prosecutor's and the victim's mother's ex parte communications with the court were derived from Sheppard's testimony.  That is, Sheppard testified about Appellant's admission of extraneous sexual offenses with the victim.  In response to that testimony, the victim's mother requested that Appellant be tested for sexually transmitted diseases.  The letter from the victim's mother did not present any new facts to the trial court.  It was after all the evidence was taken, and the ex parte communications had occurred, that the court stated it would not consider the Young letter, Sheppard's testimony, and implicitly, the ex parte communication.  The trial court in the instant case had the power to reverse its own prior rulings.  *See Tri v. J.T.T.*, 162 S.W.3d 552, 561 (Tex. 2005); *Verdin v. State*, 13 S.W.3d 121, 123 (Tex. App.–Tyler 2000, no pet.) (trial court has inherent power to vacate, modify, or amend its own ruling while it maintains plenary power over the case); *Reveal v. West*, 764 S.W.2d 8, 11 (Tex. App.–Houston [1st Dist.] 1988, orig. proceeding).  We see nothing in the record that indicates the trial court was insincere in its detailed statement that it would not consider the evidence in question, or that it was otherwise incapable of disregarding that evidence.

7

## Severity of Appellant's Sentence

Appellant nonetheless argues that the damage had been done prior to the trial court's reversal of its earlier ruling, the court was incapable of disregarding the evidence, and consideration of this evidence resulted in an excessively harsh sentence.[3]

To support his position, Appellant relies, in part, on our decision in ***Delaney v. State***, No. 12-07-00035-CR, 2008 WL 2571715 (Tex. App.–Tyler June 30, 2008, no pet.) (mem. op., not designated for publication). In ***Delaney***, the defendant initially was placed on deferred adjudication community supervision for aggravated robbery. ***Id.,*** at *1. During the punishment phase of the subsequent revocation proceeding, the evidence presented, although extensive, related solely to an extraneous offense, a murder allegedly committed by the defendant. ***Id.***, at *5. However, the testimony from the witnesses was equivocal, and the trial court did not find that the extraneous offense was proven beyond a reasonable doubt, a prerequisite to admission of the evidence. We held that without this finding, the trial court abused its discretion in admitting evidence of the extraneous offense. ***Id.***, at *6. We also held that admission of this evidence was reversible error, because under the specific facts of the case, we could not determine that consideration of that evidence had "but a slight effect" on the assessment of punishment. ***Id.*** In the instant case, however, nothing in the record demonstrates that the trial court considered the inadmissible evidence. Therefore, ***Delaney*** is distinguishable and inapplicable to the facts of the instant case.

Appellant argues further that the admissible evidence is insufficient to support a thirty year sentence. Therefore, he concludes, the trial court must have considered the inadmissible evidence despite its announcement that it would not. By this argument, Appellant invites us to reweigh the punishment evidence. However, we are unable to conduct such a review. *See* ***Jarvis v. State***, 315 S.W.3d 158, 160-62 (Tex. App.–Beaumont 2010, no pet. h.) (discussing punishment evidence standard of review and concluding that reweighing of punishment evidence and sufficiency review to support severity of sentence imposed unavailable on appeal). This court may review the severity of a sentence only through a proportionality challenge – a challenge Appellant did not make. *See **id.*** at 162. Appellant's third issue is overruled.

---

[3] Appellant does not make a constitutional proportionality challenge under the Eighth Amendment. Rather, he asks us to disregard the inadmissible evidence, consider the admissible evidence, and reweigh the evidence. In other words, Appellant asks us to reevaluate the evidence and to conclude that the evidence is insufficient to support the length of the assessed punishment.

## FACTUAL SUFFICIENCY OF PUNISHMENT EVIDENCE

In his fourth issue, Appellant contends that the evidence supporting his punishment is factually insufficient. A factual sufficiency review of the evidence supporting the assessment of punishment is inappropriate. *See Robertson v. State*, 245 S.W.3d 545, 548-49 (Tex. App.–Tyler 2007, pet. ref'd); *see also Bradfield v. State*, 42 S.W.3d 350, 351 (Tex. App.–Eastland 2001, pet. ref'd). Appellant nonetheless argues that we should change this well established rule. We decline to do so. *See State v. Mechler*, 123 S.W.3d 449, 454 (Tex. App.–Houston [14th Dist.] 2003), *aff'd*, 153 S.W.3d 435 (Tex. Crim. App. 2005) (noting that an intermediate court of appeals should generally adhere to its own prior precedents). Appellant's fourth issue is overruled.

## DISPOSITION

We ***affirm*** the judgment of the trial court.


                                                       **JAMES T. WORTHEN**
                                                           Chief Justice


Opinion delivered December 15, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)