# NO. 12-12-00397-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DAYTRON D. BROWN,* *APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Daytron Brown appeals his conviction for injury to a child.   He raises six issues on appeal. We modify the judgment and affirm as modified.

### BACKGROUND

In 2007, Appellant was charged with injury to a child, a third degree felony.[1]   Appellant and the State reached a plea bargain agreement in which Appellant agreed to plead guilty in exchange for five years deferred adjudication community supervision.   The trial court accepted the plea bargain agreement and, on February 8, 2008, placed Appellant on community supervision for a period of five years.

In August 2012, Appellant and his wife, Julia Black, went to a club.   They both drank alcohol.   After another patron of the club spoke to Appellant, Appellant and Black began to argue. Black went home, but Appellant remained at the club.   Early the next morning, Appellant arrived home and resumed the argument with Black.   Appellant scratched and punched Black, and Black

---

[1] *See* TEX. PENAL CODE ANN. § 22.04(a)(3) and (f) (West Supp. 2012).

pushed Appellant. Black called the police, and Appellant was arrested.

The State filed an Application to Proceed to Final Adjudication, and subsequently amended its application. The State alleged that Appellant violated the terms of his community supervision by (1) failing to obey the law when he assaulted Black, (2) drinking an alcoholic beverage, (3) failing to pay for urinalysis testing, (4) failing to pay for court costs, (5) failing to pay the fine imposed, and (6) failing to pay a fee related to the preparation of the Pre-Sentence Investigation Report. The trial court conducted a hearing on the State's First Amended Application to Proceed to Final Adjudication. At the conclusion of the hearing, the trial court found all of the State's allegations true. The trial court then found Appellant guilty of injury to a child and sentenced Appellant to five years of imprisonment. This appeal followed.

## COMMUNITY SUPERVISION

In his first issue, Appellant argues that the trial court abused its discretion in finding that Appellant committed a new offense. In his second issue, Appellant contends that the evidence is legally insufficient that Appellant committed a new offense or consumed alcohol.

### Standard of Review and Applicable Law

The granting of community supervision is a contractual privilege afforded a defendant whereby the court agrees to extend clemency by granting community supervision in exchange for the defendant's agreement to abide by certain requirements. *Speth v. State*, 6 S.W.3d 530, 533–34 (Tex. Crim. App. 1999). "At a hearing on an application to revoke [community supervision], guilt or innocence is not at issue, and the trial court need not determine the defendant's original criminal culpability, only whether the [defendant] broke the contract made with the trial court to receive [community supervision]." *Pierce v. State*, 113 S.W.3d 431, 436 (Tex. App.—Texarkana 2003, pet. ref'd).

In community supervision revocation cases, the state must prove that the defendant violated one of the conditions of his community supervision by a preponderance of the evidence. *Hacker v. State*, 389 S.W.3d 860, 864-65 (Tex. Crim. App. 2013). The preponderance of the evidence standard is met when the greater weight of the credible evidence before the trial court supports a reasonable belief that a condition of community supervision has been violated. *Rickels v. State*, 202 S.W.3d 759, 764 (Tex. Crim. App. 2006).

When the state has met its burden of proof and no procedural obstacle is raised, the decision whether to revoke community supervision is within the discretion of the trial court. *Flournoy v. State*, 589 S.W.2d 705, 708 (Tex. Crim. App. 1979). Thus, our review of the trial court's order revoking community supervision is limited to determining whether the trial court abused its discretion. *Caddell v. State*, 605 S.W.2d 275, 277 (Tex. Crim. App. 1980). When a trial court finds several violations of community supervision conditions, we affirm the revocation order if the proof of any single allegation is sufficient. *See Hart v. State*, 264 S.W.3d 364, 367 (Tex. App.—Eastland 2008, pet. ref'd); *Cochran v. State*, 78 S.W.3d 20, 28 (Tex. App.—Tyler 2002, no pet.). In other words, if there is some evidence to support the finding of even a single violation, the revocation order must be upheld. *See Hart*, 264 S.W.3d at 367 (citing *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980)).

Similar to the traditional legal sufficiency analysis, we view the evidence in the light most favorable to the trial court's decision to revoke. *See id.* Moreover, in a revocation proceeding, the trial judge is the sole trier of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Diaz v. State*, 516 S.W.2d 154, 156 (Tex. Crim. App. 1974); *Aguilar v. State*, 471 S.W.2d 58, 60 (Tex. Crim. App. 1971).

**Discussion**

Appellant claims that the evidence is insufficient to establish that he assaulted Black or consumed alcohol. In making this claim, Appellant points to inconsistencies in Black's testimony regarding the assault and an ambiguity regarding whether Appellant drank alcohol or simply drank.

As it relates to the assault, Appellant is correct that Black told different versions of the events involving the conflict between her and Appellant. During the 911 call that she made, Black identified Appellant as the aggressor. When speaking to the police on the morning that she was hit and scratched by Appellant, Black again identified Appellant as the aggressor. She told Officer Bryan Caldwell that Appellant grabbed her around the neck, she pushed him away, and then he punched her. However, she also told Officer Caldwell that she did not want to press charges.

When she testified at the revocation hearing, she claimed that she was "pretty tipsy" on the morning of the confrontation. Because Black was "tipsy," she claimed that she did not know if

3

she hit Appellant or if he hit her first. Later in her testimony, Black agreed that Appellant was the initial aggressor. As Black was asked to clarify, she vacillated back and forth repeatedly during her testimony between Appellant's being the aggressor and not remembering who the aggressor was.

Additional evidence supports Black's initial version that Appellant was the aggressor and assaulted Black. When Officer Caldwell arrived at the scene, Appellant was leaving his home and entering a wooded area nearby. Attempting to evade detention, Appellant laid down in the woods and had to be retrieved by Officer Caldwell so that he could speak to Appellant about the incident.

Later, Officer Caldwell took several photographs of Black. She had scratches to her neck and a bloody nose. Officer Caldwell also examined Appellant and determined that he had only a scratch under his eye. Officer Caldwell attributed Appellant's scratch to his running into the woods and hitting a vine.

The trial court concluded that Appellant was the aggressor and assaulted Black. The credibility of witnesses in a revocation hearing is solely determined by the trial court. *See Hacker*, 389 S.W.3d at 865. The trial court acted within its discretion in crediting Black's testimony that Appellant assaulted her and discrediting Black's testimony that Appellant could have been acting in self-defense. *See id.*

As to the consumption of alcohol, the record shows that Appellant and Black went to the Hyenas Club. Black testified that the Hyenas Club had alcohol, dancing, and music, and that while they were at the club, both she and Appellant drank. She did not specify that they drank alcohol, but that is the implication from her testimony, and a reasonable inference based on the record. Further strengthening the implication, Black testified that although she left the club well before Appellant, she was "pretty tipsy" the next morning when Appellant made it home.

Later in Black's testimony, she was asked if Appellant was drinking that night. She responded affirmatively, but that he did not have as much as she did. She claimed that she was intoxicated, but also stated, "I'm not saying I'm the only one intoxicated." She then denied that Appellant was intoxicated. Again, although she never uttered the word "alcohol" when describing what Appellant drank, the trial court could have reasonably concluded that Appellant drank alcohol, which was a violation of the terms of his community supervision.

4

Finally, Officer Caldwell claimed that he could smell alcohol on Appellant when he arrested him the morning of the confrontation. Officer Caldwell testified, "[I]t's a very distinct smell when somebody's intoxicated and they're in the back of your car, and you're in close proximity with them. That's when I could smell the strong odor of it." Officer Caldwell claimed that Appellant had a strong odor of alcohol emanating from him. The trial court did not abuse its discretion in determining that Appellant drank alcohol. *See Rickels*, 202 S.W.3d at 764.

Appellant's first and second issues are overruled. We need not reach Appellant's third and fourth issues, which are related to the trial court's findings that Appellant violated the financial obligations imposed on his community supervision, because we have held that the trial court properly found other violations of his community supervision. *See* TEX. R. APP. P. 47.1; *Hart*, 264 S.W.3d at 367.


## COURT COSTS

In his fifth issue, Appellant contends that the trial court erred by imposing court costs not supported by a bill of costs. In his sixth issue, Appellant argues that the evidence is legally insufficient for the trial court to assess court costs.

In the judgment of conviction, the trial court ordered the payment of $576.00 in court costs. At that time, the certified bill of costs was not in the record. A few days later, the district clerk filed a certified bill of costs, which is in the record on appeal.

### Standard of Review

A challenge to the sufficiency of the evidence supporting court costs is reviewable on direct appeal in a criminal case. *Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011). We measure sufficiency by reviewing the record in the light most favorable to the award. *Mayer v. State*, 309 S.W.3d 552, 557 (Tex. Crim. App. 2010); *Johnson v. State*, No. 12-12-00289-CR, 2013 WL 3054994, at *2 (Tex. App.—Tyler June 19, 2013, no pet. h.) (not yet released for publication).

### Applicable Law

A judgment shall "adjudge the costs against the defendant, and order collection thereof. . . ." *See* TEX. CODE CRIM. PROC. ANN. art. 42.16 (West 2006). If a criminal action is appealed, "an officer of the court shall certify and sign a bill of costs stating the costs that have

5

accrued and send the bill of costs to the court to which the action or proceeding is transferred or appealed." *Id.* art. 103.006 (West 2006). The code of criminal procedure does not require that a certified bill of costs be filed at the time the trial court signs the judgment of conviction or before a criminal case is appealed. *See id.* arts. 103.006, 103.001 (West 2006). However, "[a] cost is not payable by the person charged with the cost until a written bill is produced or is ready to be produced, containing the items of cost, signed by the officer who charged the cost or the officer who is entitled to receive payment for the cost." *Id.* art. 103.001. Requiring a convicted defendant to pay court costs does not alter the range of punishment and is authorized by statute. *See id.*; *Weir v. State*, 278 S.W.3d 364, 367 (Tex. Crim. App. 2009).

In certain circumstances, a trial court has the authority to assess attorney's fees against a criminal defendant who received court-appointed counsel. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2012). But once a criminal defendant has been determined to be indigent, he "is presumed to remain indigent for the remainder of the proceedings unless a material change in his financial circumstances occurs." *Id.* art. 26.04(p) (West Supp. 2012). Thus, the trial court must determine that the defendant has financial resources which enable him to offset in part or in whole the costs of the legal services provided, and that determination must be supported by some factual basis in the record before attorney's fees are imposed. *See Johnson*, 2013 WL 3054994, at *3. If the record does not show that the defendant's financial circumstances materially changed after the previous determination that he was indigent, the evidence will be insufficient to support the imposition of attorney's fees. *See id.* (citing *Mayer*, 309 S.W.3d at 553). Unlike other court costs, supplementation of the record to provide evidence of Appellant's ability to pay attorney's fees is not appropriate. *See Johnson*, 2013 WL 3054994, at *2 (citing *Mayer*, 309 S.W.3d at 557).

**Discussion**

Here, the judgment of conviction reflects that the trial court assessed $576.00 as court costs. The judgment of conviction also includes a document identified as "Attachment A Order to Withdraw Funds." The attachment states that Appellant has incurred "[c]ourt costs, fees and/or fines and/or restitution" in the amount of $576.00.

In his brief, Appellant argues that his right to due process was violated when the trial court ordered the withdrawal of funds from his inmate account without a bill of costs because he had no

ability to know or challenge the legal basis for the costs assessed against him. Because the clerk provided a certified bill of costs and such bill of costs is included in the record, this argument is without merit. *See* TEX. CODE CRIM. PROC. ANN. arts. 103.006, 103.001; *see also **Ballinger v. State***, No. 12-12-00280-CR, 2013 WL 3054935, at *2 n.4 (Tex. App.—Tyler June 19, 2013, no. pet.) (not yet released for publication). We overrule Appellant's fifth issue.

Appellant next contends that portions of the costs assessed are unsupported by the evidence. The bill of costs itemizes the costs, fines, fees, and restitution assessed against Appellant totaling $4,705.29. The trial court assessed $576.00 in costs in its written judgment. In the bill of costs, $300.00 is for attorney's fees, $1,742.29 is for restitution, $500.00 is for a fine initially imposed as part of Appellant's community supervision, $1,887.00 is for various fees associated with Appellant's community supervision, and $276.00 is for court costs.[2] It is apparent from the record that the trial court arrived at the $576.00 amount in court costs by adding all court costs plus attorney's fees, excluding the restitution, fine imposed as part of Appellant's community supervision, and the various fees associated with Appellant's community supervision. Appellant does not challenge the discrepancy between the bill of costs and the trial court's judgment.

We have verified that each court cost fee listed in the bill of costs is authorized by statute.[3] Appellant is required to pay all of these costs, except the attorney's fees, regardless of his indigence. *See* TEX. CODE CRIM. PROC. ANN. arts. 26.05(g), 42.16; *see also **Johnson v. State***, No. 12-12-00263-CR, 2013 WL 2286077, at *2 (Tex. App.—Tyler May 22, 2013, no pet.) (mem. op., not designated for publication) ("[T]he legislature has not preconditioned the collection of court costs or fines on an inmate's ability to pay."). Therefore, the evidence is sufficient to support the

---

[2] Appellant does not challenge the initial imposition of these various court costs, fees, fines, and restitution as part of his community supervision. Nor would such a challenge be successful. A trial court has broad discretion to determine the terms and conditions of community supervision to be imposed. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 11(a) (West Supp. 2012) ("The judge may impose any reasonable condition [of community supervision] that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant."); *Speth v. State*, 6 S.W.3d 530, 533 (Tex. Crim. App. 1999).

[3] The bill of costs lists attorney's fees, jury service fee, clerk's fee, records management, records management and preservation fee—DC, warrant fee, bond fee, arrest fee (commit and release), courthouse security, consolidated court fees, judiciary fund county, judiciary fund state, and indigent defense court cost. All of these fees are authorized by statute. *See* TEX. CODE CRIM. PROC. ANN. arts. 26.05(g), 102.0045(a) (West Supp. 2012), 102.005(a), (f) (West 2006), 102.011(a)(2), (5), (6) (West Supp. 2012), 102.017(a) (West Supp. 2012); TEX. LOCAL GOV'T CODE ANN. §§ 133.102(a)(1) (West Supp. 2012), 133.105(a), (b) (West 2008), 133.107(a) (West Supp. 2012).

trial court's assessment of $276.00 in court costs against Appellant.[4]

There is no evidence in the record, however, that Appellant's financial circumstances materially changed after the trial court determined that he was indigent. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p). The record shows that the trial court made three separate findings of Appellant's indigence—by appointing counsel to represent Appellant before his plea, by appointing counsel to represent Appellant at the hearing on the State's First Amended Application to Proceed to Final Adjudication, and by appointing appellate counsel after it found him guilty and assessed his punishment. The trial court made no finding that Appellant has financial resources which enable him to offset in whole or in part the costs of the legal services he was provided. Consequently, the evidence is insufficient to support the imposition of attorney's fees as court costs. *See id.* art. 26.04(p), 26.05(g); *see also **Johnson***, 2013 WL 3054994, at *4.

We sustain Appellant's sixth issue in part.

## DISPOSITION

Having overruled Appellant's first, second, and fifth issues, and having sustained Appellant's sixth issue in part, we modify the trial court's judgment to reflect that the amount of court costs is $276.00. *See* TEX. R. APP. P. 43.2(b). We also modify Attachment A to delete the assessment of $300.00 in attorney's fees and to state that the total amount of "court costs, fees and/or fines and/or restitution" is $276.00. *See, e.g.*, ***Reyes v. State***, 324 S.W.3d 865, 868 (Tex. App.—Amarillo 2010, no pet.). We ***affirm*** the judgment of the trial court ***as modified***. *See* TEX. R APP. P. 43.2(b).

**BRIAN HOYLE**
Justice

Opinion delivered July 31, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

---

[4] From the record, it appears that Appellant already has paid these court costs. If Appellant has paid court costs, the trial court's order to withdraw funds will not harm Appellant, as it only authorizes a withdrawal of funds to the extent that the total amount of court costs remains unpaid. Further, we note that Appellant does not raise his prepayment of these court costs as a basis for removing them from the judgment. Rather, he seeks a ruling that the imposition of court costs was improper.



# COURT OF APPEALS

## TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 31, 2013**


## NO. 12-12-00397-CR


**DAYTRON D. BROWN,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 7th Judicial District Court
of Smith County, Texas. (Tr.Ct.No. 007-1752-07)

---

THIS CAUSE came on to be heard on the appellate record and the briefs filed herein; and the same being inspected, it is the opinion of the Court that the trial court's order of dismissal below should be **modified and, as modified, affirmed**.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's order of dismissal below be **modified** to reflect that the amount of court costs is $276.00. We also modify Attachment A to delete the assessment of $300.00 in attorney's fees and to state that the total amount of "court costs, fees and/or fines and/or restitution" is $276.00; **and as modified**, the trial court's order of dismissal is **affirmed**; and that this decision be certified to the trial court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

9