NO












 
 
 
 
 
 
  
 
 
 
 
  
 


NO. 12-09-00201-CR

 

                         IN
THE COURT OF APPEALS

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

 

CURTIS EDWARD COOK,                              §     APPEAL
FROM THE 173RD

APPELLANT

 

V.                                                                         §     JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE                                                        §     HENDERSON
COUNTY, TEXAS

 





MEMORANDUM
OPINION

Curtis
Edward Cook appeals the adjudication of his guilt and revocation of his
community supervision for aggravated sexual assault of a child.  He raises four
issues on appeal.  We affirm.

 

Background

Appellant
was charged by indictment in the January 2008 grand jury term in Henderson
County, Texas, with the offense of aggravated sexual assault of a child;
specifically, his twelve year old granddaughter.  He negotiated a formal plea
bargain, waived his right to trial by jury, and judicially confessed to
committing the offense.  On September, 29, 2008, he was placed on ten years of
deferred adjudication community supervision.

On
February 9, 2009, the State moved to adjudicate Appellant’s guilt, alleging
that Appellant had violated the terms and conditions of his community
supervision.  In its motion, the State alleged five violations of the terms and
conditions of Appellant’s community supervision.  Specifically, counts one
through five, respectively, alleged that Appellant failed to (1) register as a
sex offender in Kaufman County, Texas, on or about January 20, 2009; (2)
register as a sex offender in Henderson County, Texas, on or about January 11,
2009; (3) refrain from living within 1,000 feet of a location where children
commonly gather; (4) obtain prior consent to any change of address; and (5)
complete ten hours of community service per month.

Appellant
pleaded “not true” to the allegations in the State’s motion to adjudicate. 
After an evidentiary hearing on the State’s motion, the trial court found count
one to be “not true” and the remaining four counts to be “true.”  Based on
these findings, the trial court proceeded to a determination of guilt and found
Appellant guilty of the offense of indecency with a child.  After a hearing,
the trial court sentenced Appellant to thirty years of imprisonment.

 

Legal Sufficiency of the Evidence

            In
his first issue, Appellant challenges the legal sufficiency of the evidence to
support the revocation of his community supervision.

Standard of Review and Applicable
Law

The
granting of community supervision is a contractual privilege afforded a
defendant whereby the court agrees to extend clemency by granting community
supervision in exchange for the defendant’s agreement to abide by certain
requirements.  Speth v. State, 6 S.W.3d 530, 533-34 (Tex. Crim. App.
1999).  A trial court has broad discretion to determine the terms and
conditions of community supervision to be imposed.  See Tex. Code Crim. Proc. Ann. art. 42.12,
§ 11(a) (Vernon Supp. 2010) (“The judge may impose any reasonable condition [of
community supervision] that is designed to protect or restore the community,
protect or restore the victim, or punish, rehabilitate, or reform the defendant.”);
Speth, 6 S.W.3d at 533.  This discretion includes the authority
to order community service.  Tex. Code
Crim. Proc. Ann. art. 42.12, §§ 11(a)(10), 16 (Vernon Supp.
2010).

“At
a hearing on an application to revoke [community supervision], guilt or
innocence is not at issue, and the trial court need not determine the
defendant’s original criminal culpability, only whether the [defendant] broke
the contract made with the trial court to receive [community supervision].”  Pierce
v. State, 113 S.W.3d 431, 436 (Tex. App.–Texarkana 2003, pet. ref'd). 

In
community supervision revocation cases, the state has the burden to establish
by a preponderance of the evidence that the terms and conditions of community
supervision have been violated.  Cardona v. State, 665 S.W.2d
492, 493 (Tex. Crim. App. 1984).  The preponderance of the evidence standard is
met when the greater weight of the credible evidence before the trial court
supports a reasonable belief that a condition of community supervision has been
violated.  Rickels v. State, 202 S.W.3d 759, 764 (Tex. Crim. App.
2006).

When
the state has met its burden of proof and no procedural obstacle is raised, the
decision whether to revoke community supervision is within the discretion of
the trial court.  Flournoy v. State, 589 S.W.2d 705, 708 (Tex. Crim.
App. 1979).  Thus, our review of the trial court’s order revoking community
supervision is limited to determining whether the trial court abused its
discretion.  Caddell v. State, 605 S.W.2d 275, 277 (Tex. Crim.
App. 1980).  When a trial court finds several violations of community supervision
conditions, we affirm the revocation order if the proof of any single
allegation is sufficient.  See Hart v. State, 264 S.W.3d 364, 367
(Tex. App.–Eastland 2008, pet. ref'd); Cochran v. State, 78
S.W.3d 20, 28 (Tex. App.–Tyler 2002, no pet.).

Similar
to the traditional legal sufficiency analysis, we view the evidence in the
light most favorable to the trial court’s decision to revoke.  Hart,
264 S.W.3d at 367.  Moreover, in a revocation proceeding, the trial judge is
the sole trier of the facts, the credibility of the witnesses, and the weight
to be given to witnesses’ testimony.  Diaz v. State, 516 S.W.2d
154, 156 (Tex. Crim. App. 1974); Aguilar v. State, 471 S.W.2d 58,
60 (Tex. Crim. App. 1971).

Discussion

Although
he pleaded “not true” to all alleged violations of his community supervision,
Appellant admits in his brief that the evidence is “technically sufficient” to
support the trial court’s conclusion that he violated his community service
requirement. 

The
trial court’s community supervision order required Appellant to “satisfactorily
complete 1000 hours of Community Service Work at the rate of 10 (ten) hours
each month beginning October, 2008. . . .”  The record shows that Appellant
completed sixteen hours in October, eight in November, zero in December, and
eight in January.  The State filed the motion to adjudicate guilt and to revoke
Appellant’s community supervision on February 9, 2009. 

Donna
Ward, Appellant’s community supervision officer, testified that no more than
eight hours of credit is granted per day.  Moreover, Ward testified that the
community supervision department does not permit monthly excess to be carried
forward to the following month’s obligation, but does allow any additional
service to credit toward the total 1,000 hour obligation.  

Appellant
argues that enforcement of these “ad hoc” rules would violate the contract
construction maxim that ambiguous contractual terms must be interpreted against
the drafter.  Consequently, Appellant contends that he need not actually perform
ten hours each month.  Rather, under contract construction principles, he
argues that so long as his total community service hours average at least ten
hours per month, regardless of how many hours he completes in any given month,
he is in compliance with the community service requirement.  We need not
address the merits of this argument, however, because Appellant fell short of
his community service obligation under either measure.

Appellant
failed to complete ten hours in November, December, and January, and
consequently, he did not complete ten hours “each month.”  Alternatively, under
his proposed measure, Appellant completed only thirty-two hours, and as of the
date the State filed its motion to adjudicate Appellant’s guilt, he was
required to have completed forty hours to be in compliance.  Therefore, under
either construction of the community service obligation, the State’s proof is
sufficient to support the trial court’s finding that Appellant fell below the
required number of hours.  See Welch v. State, No. 06-03-00068-CR,
2003 WL 22682595, at *1 (Tex. App.–Texarkana Nov. 14, 2003, no pet.) (mem. op.,
not designated for publication) (holding evidence sufficient to show defendant
failed to complete community service hours by averaging less than ten hours per
month at time revocation proceedings filed, though not foreclosing community
supervision requirement that ten hours be completed each month).

Appellant
nevertheless argues that the violation of the community service requirement was
a mere technicality and not sufficiently serious to warrant adjudication of
Appellant’s guilt and revocation of his community supervision.  “Courts may
revoke community supervision for a violation of any condition, including
violations of any single ‘technical’ condition.”  Nurridin v. State,
154 S.W.3d 920, 924 (Tex. App.–Dallas 2005, no pet.).  Moreover, “[e]very
condition of probation is important, and if not complied with, subjects the
defendant to potential revocation.”  Nicholas v. State, No.
12-01-00102-CR, 2002 WL 253837, at *2 (Tex. App.–Tyler Feb. 20, 2002, no pet.)
(mem. op., not designated for publication) (holding violation of community
service hour requirement sufficient to warrant revocation).  This includes the
community service requirement.  Elizondo v. State, 966 S.W.2d 671,
673 (Tex. App.–San Antonio 1998, no pet.).

Since
the State’s proof is sufficient to support revocation for at least one of
Appellant’s community supervision conditions, we need not examine the remaining
alleged violations.  The trial court did not abuse its discretion in revoking
Appellant’s community supervision.  Appellant’s first issue is overruled. 

 

Factual Sufficiency of the Evidence

In
his second issue, Appellant alleges that the evidence is factually insufficient
to support the adjudication of his guilt and revocation of his community
supervision.  Factual sufficiency review is not available in an appeal from a
revocation of community supervision.  See Hart, 264 S.W.3d
at 367; see also Cochran, 78 S.W.3d at 27 (implicitly holding
factual sufficiency review unavailable in community supervision revocation
cases).  Appellant’s second issue is overruled.

 

Excessive Sentence Resulting from Inadmissible
Evidence

            In
his third issue, Appellant argues that “the trial court acted upon inadmissible
evidence to sentence [Appellant] to an excessively long sentence, only 135 days
after placing him on the lightest form of community supervision.”  The evidence
of which Appellant complains consists of (1) a letter from his counselor
describing extraneous sexual offenses with other victims, (2) testimony from a
polygrapher that Appellant committed extraneous sexual offenses with the victim
in this case and written admissions by Appellant confirming those acts, as well
as (3) evidence received through ex parte communications with the trial court.

The Evidence

            Linda
Young, a therapist, conducts a sex offender treatment program.  The trial court
assigned Appellant to Young’s program.  Appellant underwent twelve group
sessions and approximately four to five individual sessions[1]
before the State filed its motion to adjudicate his guilt and revoke his
community supervision. 

A
letter drafted by Young was filed as part of the clerk’s record on January 30,
2009, just prior to the State’s filing its motion to adjudicate.  In the
letter, Young wrote that Appellant admitted to several extraneous sexual
offenses with other victims.  She also listed the results of his sexual arousal
assessment (ABEL assessment).  Finally, in her letter, Young wrote that Appellant
“lied about his behavior,” avoided treatment, failed to follow program rules,
and is “grooming” his step-grandson.  On May 4, 2009, during the punishment
hearing, the trial court took judicial notice of its file; however, the letter
was never specifically offered during Young’s testimony, nor was any reference
made to the extraneous offenses described in the letter.

As
an additional condition of Appellant’s community supervision, he was required
to submit to polygraph examinations.  After Young testified, the trial court
heard evidence from Andy Sheppard, a polygrapher.  Sheppard testified that
prior to taking an examination, Appellant admitted to several other extraneous
sexual offenses with the victim in this case, and that Appellant signed written
statements detailing those offenses. Sheppard’s testimony and the written
statements were initially admitted into evidence over Appellant’s objection. 
The trial court then recessed the punishment hearing until May 27, 2009. 

In
the interim, on May 12, 2009, the State filed a letter in the trial court, in
which the prosecutor stated that “[u]pon hearing some of the details of the
sexual assault in [the] Curtis Cook case, the victim’s family has requested and
would like to have [Appellant] tested for STD’s and Aids [sic].”  The letter
was not in the form of a motion and contained no certificate of service.  The
State does not contend that the letter was served upon Appellant or his
counsel.  Attached to the State’s letter was a letter from the victim’s mother
to the trial judge and a proposed order.  The victim’s mother stated in the
letter that she wanted Appellant tested for sexually transmitted diseases because
on May 4, 2009, she had learned of other sexual acts allegedly committed
by Appellant against the victim.[2]  On May 13, 2009, without a
hearing, the trial court signed an order for the test.  The record does not
disclose whether the test was ever administered or the results of any such
test. 

On
May 27, 2009, the trial court continued the punishment hearing, at which time
the State called Young as a witness for a second time.  She testified that
Appellant was not cooperative in his treatment program.  After Young’s
testimony, Appellant and the State rested and presented argument on punishment.


The Trial Court’s Action

Appellant
contends that the court’s admission of the Young letter and Sheppard’s
testimony, as well Appellant’s written statements provided by Sheppard,
constitute an Estelle v. Smith violation.  See generally Estelle
v. Smith, 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981) (holding
that admission of psychiatrist’s testimony violated Fifth Amendment where
defendant was not advised of right to remain silent and that any statement he
made could be used against him).  Appellant further argues that the evidence
received through the ex parte communications resulted in an impermissibly harsh
sentence.  However, we need not address those issues.  The trial court
initially admitted and heard the evidence. But when the punishment hearing
resumed on May 27, 2009, the court ruled that it would not consider that
evidence for any purpose.  Specifically, the trial court ruled as follows:

 

I’ve thought about it since then.  And, you know, just
to be honest, I’m not sure what the law is on whether those statements are
considered -- would you know, come under Miranda or come under -- would be
considered to be otherwise coerced, outside of any Miranda considerations.

                And, not knowing, I think that what
the Court would prefer to do is err on the side of a defendant’s constitutional
rights.  So the Court is not going to consider statements made by defendant
that would tend to incriminate him, made to counselors and polygraph examiners
and so forth, that he was required to make as part of his probation.  The Court
is not going to consider those statements either as evidence of the defendant’s
guilt or in assessing his punishment.

 

The State
continued to argue that the evidence was admissible, and the trial court stated
that “[y]ou may be right, . . . but I’m going to err the other way. . . .”  Consequently,
the Young letter, Sheppard’s testimony, and the written admissions provided by
Sheppard were not considered by the trial court in sentencing Appellant.

            Moreover,
the prosecutor’s and the victim’s mother’s ex parte communications with the
court were derived from Sheppard’s testimony.  That is, Sheppard testified
about Appellant’s admission of extraneous sexual offenses with the victim.  In
response to that testimony, the victim’s mother requested that Appellant be
tested for sexually transmitted diseases.  The letter from the victim’s mother
did not present any new facts to the trial court.  It was after all the
evidence was taken, and the ex parte communications had occurred, that the
court stated it would not consider the Young letter, Sheppard’s testimony, and
implicitly, the ex parte communication.  The trial court in the instant case
had the power to reverse its own prior rulings.  See Tri v. J.T.T.,
162 S.W.3d 552, 561 (Tex. 2005); Verdin v. State, 13 S.W.3d 121,
123 (Tex. App.–Tyler 2000, no pet.) (trial court has inherent power to vacate,
modify, or amend its own ruling while it maintains plenary power over the
case); Reveal v. West, 764 S.W.2d 8, 11 (Tex. App.–Houston [1st
Dist.] 1988, orig. proceeding).  We see nothing in the record that indicates
the trial court was insincere in its detailed statement that it would not
consider the evidence in question, or that it was otherwise incapable of
disregarding that evidence.

 

 

 

Severity
of Appellant’s Sentence

Appellant
nonetheless argues that the damage had been done prior to the trial court’s
reversal of its earlier ruling, the court was incapable of disregarding the
evidence, and consideration of this evidence resulted in an excessively harsh
sentence.[3]

To
support his position, Appellant relies, in part, on our decision in Delaney
v. State, No. 12-07-00035-CR, 2008 WL 2571715 (Tex. App.–Tyler June 30,
2008, no pet.) (mem. op., not designated for publication). In Delaney,
the defendant initially was placed on deferred adjudication community
supervision for aggravated robbery.  Id., at *1. 
During the punishment phase of the subsequent revocation proceeding, the
evidence presented, although extensive, related solely to an extraneous
offense, a murder allegedly committed by the defendant.  Id.,
at *5.  However, the testimony from the witnesses was equivocal, and
the trial court did not find that the extraneous offense was proven beyond a
reasonable doubt, a prerequisite to admission of the evidence.  We held that without
this finding, the trial court abused its discretion in admitting evidence of
the extraneous offense.  Id., at *6.  We also held that admission
of this evidence was reversible error, because under the specific facts of the case,
we could not determine that consideration of that evidence had “but a slight
effect” on the assessment of punishment.  Id.  In the instant
case, however, nothing in the record demonstrates that the trial court
considered the inadmissible evidence.  Therefore, Delaney is
distinguishable and inapplicable to the facts of the instant case.

Appellant
argues further that the admissible evidence is insufficient to support a thirty
year sentence.  Therefore, he concludes, the trial court must have considered
the inadmissible evidence despite its announcement that it would not.  By this
argument, Appellant invites us to reweigh the punishment evidence.  However, we
are unable to conduct such a review.   See Jarvis v. State, 315
S.W.3d 158, 160-62 (Tex. App.–Beaumont 2010, no pet. h.) (discussing punishment
evidence standard of review and concluding that reweighing of punishment
evidence and sufficiency review to support severity of sentence imposed
unavailable on appeal).  This court may review the severity of a sentence only through
a proportionality challenge – a challenge Appellant did not make.  See id.
at 162.  Appellant’s third issue is overruled.

Factual Sufficiency of Punishment Evidence

            In
his fourth issue, Appellant contends that the evidence supporting his
punishment is factually insufficient.  A factual sufficiency review of the
evidence supporting the assessment of punishment is inappropriate.  See Robertson
v. State, 245 S.W.3d 545, 548-49 (Tex. App.–Tyler 2007, pet. ref'd); see
also Bradfield v. State, 42 S.W.3d 350, 351 (Tex. App.–Eastland
2001, pet. ref'd).  Appellant nonetheless argues that we should change this
well established rule. We decline to do so.  See State v. Mechler,
123 S.W.3d 449, 454 (Tex. App.–Houston [14th Dist.] 2003), aff’d, 153
S.W.3d 435 (Tex. Crim. App. 2005) (noting that an intermediate court of appeals
should generally adhere to its own prior precedents).  Appellant’s fourth issue
is overruled. 

 

Disposition

            We affirm
the judgment of the trial court.

            

                                                                                                
JAMES T. WORTHEN    

                                                                                                            Chief
Justice

 

 

Opinion delivered December 15, 2010.

Panel consisted of
Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)









[1]
Young testified that she believed that there were four or five individual
sessions, but upon further questioning, mentioned that she was not exactly sure
how many sessions took place.

 





[2]
May 4, 2009, was the date that Sheppard provided his testimony.





[3]
Appellant does not make a constitutional proportionality challenge under the
Eighth Amendment.  Rather, he asks us to disregard the inadmissible evidence,
consider the admissible evidence, and reweigh the evidence.  In other words,
Appellant asks us to reevaluate the evidence and to conclude that the evidence
is insufficient to support the length of the assessed punishment.