OPINION NUNC PRO TUNC
 

 Opinion by
 

 Justice FITZGERALD.
 

 This Court’s opinion of January 26, 2005 is withdrawn. The following is the opinion of this Court.
 

 Keisha Rasheedah Nurridin a/k/a Keisha Rena Curry appeals the revocation of community supervision from her conviction for robbery and her two convictions for forgery. Appellant asserts the trial court erred in determining the affirmative defense of the State’s lack of due diligence in apprehending appellant applied only to the allegation that appellant violated her community supervision by failing to report and not to any of the other alleged violations of community supervision. We conclude the trial court correctly interpreted the statute. We affirm the trial court’s judgments.
 

 BACKGROUND
 

 On September 5,1997, appellant pleaded nolo contendere to two charges of forgery, and the trial court sentenced her to two years’ confinement and a $300 fine in each case. The trial court suspended imposition of the term of confinement and placed appellant on community supervision for a two-year term. On April 27, 1998, appellant pleaded guilty to robbery, and the trial court sentenced her to five years’ imprisonment and a $500 fine. The trial court suspended imposition of the term of imprisonment and placed appellant on community supervision for a five-year term. On July 2, 1999 and September 3, 1999, the State filed motions to revoke appellant’s community supervision in the two forgery cases, alleging appellant violated the terms of her community supervi
 
 *908
 
 sion by using marijuana, failing to pay fees, fines, and court costs, failing to perform community service, and failing to report. The trial court issued a capias for appellant on July 2, 1999. On April 7, 2003, the State filed a motion to revoke appellant’s community supervision in the robbery case, alleging appellant violated the terms of her community supervision by using marijuana and failing to report. Appellant was taken into custody on December 23, 2003. On March 18, 2004, the trial court heai*d evidence on the motions to revoke. On March 22, 2004, the trial court announced from the bench that the allegation of failing to report was not true, apparently because the State failed to act with due diligence in apprehending appellant, and that the other allegations were true. The trial court revoked appellant’s community supervision in each case and sentenced her to two years’ imprisonment.
 

 JURISDICTION AFTER EXPIRATION OF COMMUNITY SUPERVISION TERM
 

 Before 2003, article 42.12 of the code of criminal procedure did not expressly provide that a trial court had jurisdiction to revoke a defendant’s community supervision and sentence him after the expiration of the term of community supervision for a violation occurring during the term of community supervision. In
 
 Peacock v. State,
 
 77 S.W.3d 285 (Tex.Crim.App.2002), the court of criminal appeals discussed a trial court’s jurisdiction under the law in 2002 to revoke a defendant’s community supervision after the term of community supervision had expired. A trial court could hold a hearing on a motion to revoke community supervision after the term of community supervision had expired.
 
 Id.
 
 at 287. However, the trial court lacked jurisdiction to revoke community supervision after expiration of the term unless (1) the record showed a motion to revoke was filed and a capias was issued before the community supervision term expired, and (2) the State proved by a preponderance of the evidence that it used due diligence in executing the capias and in holding a hearing on the motion to revoke.
 
 Id.
 
 at 287-88. The reason for this system of continuing jurisdiction was to prevent a defendant from benefitting by absconding until the expiration of the term of community supervision.
 
 Id.
 
 at 288. The reason for the requirement that the State prove due diligence was to ensure that the policy of continuing jurisdiction was exercised only in those cases where a defendant was eluding capture.
 
 Id.
 
 at 289. “Just as the probationer should not benefit from hiding, the State should not benefit by doing nothing meaningful to execute a capias, i.e., if a probationer is not being sought, there is no reason for the court to have continuing jurisdiction.”
 
 Id.
 

 In 2003, the legislature indicated it disagreed with the system of continuing jurisdiction created by case law,
 
 [1]
 
 and it amend
 
 *909
 
 ed article 42.12 to address the trial court’s continuing jurisdiction to revoke community supervision after the expiration of the term of community supervision.
 
 See
 
 Act of May 30, 2003, 78th Leg., R.S., ch. 250, §§ 2, 3, 2003 Tex. Gen. Laws 1158, 1158 (codified at Tex.Code Crim. PROC. Ann. art. 42.12, §§ 21(e) & 24 (Vernon Supp.2004-05)). To section 21 of article 42.12, the legislature added paragraph (e):
 

 A court retains jurisdiction to hold a hearing under Subsection (b) and to revoke, continue, or modify community supervision, regardless of whether the period of community supervision imposed on the defendant has expired, if before the expiration the attorney representing the state files a motion to revoke, continue, or modify community supervision and a capias is issued for the arrest of the defendant.
 

 Tex.Code CRIM. Proc. Ann. art. 42.12, § 21(e). The legislature also added section 24:
 

 For the purposes of a hearing under Section ... 21(b), it is an affirmative defense to revocation for an alleged failure to report to a supervision officer as directed or to remain within a specified place that a supervision officer, peace officer, or other officer with the power of arrest under a warrant issued by a judge for that alleged violation failed to contact or attempt to contact the defendant in person at the defendant’s last known residence address or last known employment address, as reflected in the files of the department serving the county in which the order of community supervision was entered.
 

 Id.
 
 art. 42.12, § 24.
 

 In her single issue on appeal, appellant questions whether the legislature, by enacting section 24, intended to end the “due-diligence defense” as to all allegations of violations of conditions of community supervision except for failing to report or to remain in a specified place.
 

 The overall goal when interpreting a statute is to discern the collective intent or purpose of the legislators who enacted the legislation.
 
 Sanchez v. State,
 
 138 S.W.3d 324, 325 (Tex.Crim.App.2004);
 
 Boykin v. State,
 
 818 S.W.2d 782, 785 (Tex.Crim.App.1991). “[W]e necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment.”
 
 Boykin,
 
 818 S.W.2d at 785. When reviewing the literal text of the statute, this Court will read the words and phrases of the statute in context and construe them “according to the rules of grammar and common usage.” Tex. Gov’t Code Ann. § 311.011(a) (Vernon 1998). When the meaning of the text of a statute should have been plain to the legislators who voted on it, “we ordinarily give effect to that plain meaning.”
 
 Boykin,
 
 818 S.W.2d at 785. ‘Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.”
 
 Coit v. State,
 
 808 S.W.2d 473, 475 (Tex.Crim.App.
 
 *910
 
 1991) (quoting
 
 Ex parte Davis,
 
 412 S.W.2d 46, 52 (Tex.Crim.App.1967)).
 

 Appellant argues section 24 shows the legislature intended to preserve the due-diligence defense and to relax the State’s burden of proof. Appellant asserts that if “the legislature intended for the due diligence defense to apply only to allegation [sic] of not reporting, the bill would have used more limiting language, such as ‘only’ or ‘is limited to.’ ” Appellant then appears to argue that the legislature intended for the affirmative defense to apply to all allegations of violations of community supervision as long as the violations include the failure to report or to remain in a specified place.
 

 We disagree with appellant’s interpretation. The language of section 24 is clear. The affirmative defense applies “to revocation for an alleged failure to report to a supervision officer as directed or to remain within a specified place.” Tex.Code CRIM. Pkoc. Ann. art. 42.12, § 24. The legislature could have used the words “only” or “limited to,” but it did not have to do so.
 

 Appellant’s argument that the affirmative defense applies to all allegations of community supervision violations that include the failure to report or to remain in a specified place lacks merit because section 24 specifically limits the applicability of the affirmative defense to two grounds, the failure to report and the failure to remain in a specified place. Contrary to appellant’s argument, the statute does not state, and cannot reasonably be interpreted to read, that it applies to all allegations as long as one of the allegations is the failure to report or to remain in a specified place.
 

 Appellant also argues the trial court’s interpretation of section 24 would promote revocations based solely upon “technical” violations, which appellant asserts is contrary to the legislature’s intent. Appellant asserts that if section 24’s affirmative defense applies only to allegations for failure to report, “then courts would be free to revoke probations for other technical reasons.” Whether to revoke community supervision is within the discretion of the trial court.
 
 Cardona v. State,
 
 665 S.W.2d 492, 493 (Tex.Crim.App.1984);
 
 Lee v. State,
 
 952 S.W.2d 894, 897 (Tex.App.Dallas 1997, no pet.). Courts may revoke community supervision for a violation of any condition, including violations of any single “technical” condition.
 
 See Allbright v. State,
 
 13 S.W.3d 817, 819 (Tex.App.-Fort Worth 2000, pet. ref'd);
 
 Lee,
 
 952 S.W.2d at 900;
 
 see also
 
 Tex.Code Crim. Proc. Ann. art. 42.12, § 21(b) (if violation found, court may continue, extend, modify, or revoke community supervision). Appellant’s assertion lacks merit.
 

 We conclude the plain, unambiguous language of section 24 makes clear that this affirmative defense applies only to revocations on the grounds of failing to report or to remain in a specified place. We resolve appellant’s issue against her.
 

 We affirm the trial court’s judgments.
 

 [1]
 

 . The Senate Criminal Justice Committee explained the purpose of the bill:
 

 Current case law requires the state to “exercise due diligence” to apprehend a defendant for violating probation including for absconding. The state is penalized if it does not continually, until the defendant is apprehended, make efforts to locate the absconder. Some feel that the defendant, who has been given a second chance by being placed on probation, should have the responsibility to comply with all terms and conditions of probation and not have as a possible result the dismissal of the state’s motion to revoke probation. C.S.H.B. 1634 ensures the ability of a court to maintain jurisdiction over a person who absconds while on probation.
 

 Senate Criminal Justice Comm., Bill Analysis, Tex. H.B. 1634, 78th Leg., R.S., 2003. The House Committee on Criminal Jurisprudence used similar language to explain the purpose of the bill:
 

 Current case law requires the state to "exercise due diligence” to apprehend a defen
 
 *909
 
 dant for violating his probation. As the law stands now, the defendant is rewarded for not complying with the terms and conditions of his probation by absconding. The state is penalized if it does not continually, until the defendant is apprehended, make efforts to locate the absconder. The defendant, who has been given a second chance by being placed on probation, should have the responsibility to comply with all terms and conditions of probation and not be rewarded with a dismissal of the state’s motion to revoke probation when he absconds. C.S.H.B. 1634 ensures the ability of a court to maintain jurisdiction over a person who absconds while on probation.
 

 House Criminal Jurisprudence Comm., Bill Analysis, Tex. H.B. 1634, 78th Leg., R.S., 2003.