

# NUMBER 13-10-106-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**JAVIER CISNEROS CAMPOS,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

### On appeal from the 103rd District Court of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Vela
### Memorandum Opinion by Justice Vela

A Cameron County grand jury indicted appellant, Javier Cisneros Campos, for possession of less than twenty-eight grams of cocaine. He pleaded guilty and received five years' deferred-adjudication probation, beginning July 14, 1992. Following an

adjudication hearing, the trial court adjudicated him guilty and sentenced him to twenty years' imprisonment. By one issue, appellant argues the trial court erred in failing to dismiss the motion to adjudicate guilt because the State did not use due diligence to bring him to face his adjudication of guilt. We affirm.

## I. PROCEDURAL HISTORY

On August 25, 1993, the State filed a motion for adjudication of guilt, alleging appellant violated various conditions of his probation. Following a hearing, the trial court continued him on probation. On September 22, 1995, the State filed a second motion for adjudication of guilt, alleging appellant violated eight conditions of his probation, including an allegation that he committed capital murder on April 24, 1995. On October 9, 1995, the trial court ordered the clerk to issue a capias, commanding the sheriff to arrest appellant so that he could answer the allegations in the second motion for adjudication of guilt.

On August 6, 1999, the trial court signed an order to show cause, directing the State to (1) show cause why the trial court should not dismiss the second motion for adjudication of guilt for want of prosecution, and (2) present evidence regarding "all diligence heretofore used to effect the arrest of [appellant] herein to answer to the Motion." In two letters addressed to the trial court, Blanca Castaneda, a Cameron County community supervision officer, stated she had contacted the Florida Highway Department, which reported that appellant was residing in Bonita Springs, Florida and that he had obtained a valid driver's license until the year 2000. Castaneda stated this information was forwarded to the Cameron County Sheriff's Department.

2

On March 1, 2004, the trial court signed a second order to show cause, which contained the same directives as the first order signed by the court. In a letter addressed to the trial court dated March 12, 2004, Castaneda informed the court that on August 2, 2001, Detective Lucio of the Brownsville Police Department told her that he believed appellant was in custody at the jail in Matamoros, Tamaulipas, Mexico, and wanted a copy of appellant's picture and fingerprints. On August 5, 2002, Detective Lucio told Castaneda that Mexican officials claimed appellant was furloughed and that he never returned. Castaneda also stated that on January 13, 2004, she contacted appellant's cousin, Ricardo Cisneros, who claimed appellant was living in Mexico and hiding from Mexican officials.

On December 5, 2005, the trial court signed a third order to show cause, which contained the same directives as the prior two orders signed by the court. In a letter addressed to the trial court dated November 21, 2008, Connie Jaramillo, a Cameron County community supervision officer, informed the court that on August 20, 2008, a home visit was conducted at appellant's previous address, but the new residents said they did not know anybody by appellant's name. Jaramillo also stated that contact was made with appellant's friend, Abel Munoz, who claimed he had not seen appellant in approximately fifteen years. In a letter addressed to the trial court dated January 4, 2010, Jaramillo advised that "[o]n November 19, 2008, the defendant was extradited by Mexican Officials and is currently detained at the Olmito County Jail."

On January 14, 2010, the trial court held a hearing on the second motion for adjudication of guilt. Appellant attended this hearing but did not testify. Connie

Jaramillo, the Cameron County supervision officer assigned to appellant's case, testified that the probation department gave appellant "permission to go to the State of Florida, and from then on, we didn't know of him anymore." When the prosecutor asked her about the efforts she made in trying to locate appellant, she said, "[W]e've contacted references, done home visits. At one point, we found out that he was in the State of Florida, and we were having contact with some agents from the State of Florida, which were also trying to locate him." She testified that the Cameron County Probation Department listed appellant as an "absconder."

On cross-examination, when defense counsel asked Jaramillo if the Cameron County Probation Department "use[d] due diligence in sending a warrant to the Florida police to go down to . . . [appellant's Bonita Springs, Florida] address to see if [appellant] was there and have him picked up?", she said that the probation department forwarded the information "[t]o our [Cameron County] sheriff's office, and then I believe they are the ones who sent the information to Florida." When asked, "[D]o you have a means to check with the NCIC/TCIC[1] computer to see if his [appellant's] information has been placed in the computer?", she said, "Yes, we do." When asked "[a]nd did you do that?", she said, "Yes, we did." Jaramillo testified that on August 20, 2008, she made a home visit to appellant's last known address on Jennifer Avenue and found out that appellant's family no longer lived at that address.

Samuel Lucio, a police officer with the Brownsville Police Department, testified appellant told him that from April 1995 to the present time he had been in Mexico. Officer

---

[1]NCIC and TCIC stands for National Crime Information Center and Texas Crime Information Center.

Lucio testified that "[t]he Mexican authorities turned him [appellant] over to our department."

The defense called David Martinez, who testified that on April 24, 1995, he was with his brother and appellant outside a home in Brownsville. At that time, Martinez heard appellant fire "several shots" from a rifle. After the shooting, they left the scene and saw appellant's brother on a motorcycle. Appellant left with his brother. Two days later, Martinez saw appellant in Matamoros.

Connie Jaramillo testified for the defense that she did not know when the warrant for appellant's arrest was entered into NCIC/TCIC.

After the trial judge heard the testimony, she announced in open court that "I'm going to take judicial notice of the Court's file, . . . that tells me . . . that a warrant was, in fact, issued in 1995, and we know it was eventually placed in NCIC/TCIC. I don't have the exact date of when it was placed in NCIC/TCIC, but I know a warrant was active." The trial judge found that appellant violated the conditions of his probation because he (1) "did not report as instructed," (2) "did not, within ten days, inform the probation department that he had been arrested again," (3) "did not avoid persons and places of disreputable or harmful character," and (4) "was arrested for a new offense, which is the capital murder offense." The trial judge adjudicated appellant guilty and sentenced him to twenty years' imprisonment. The trial judge also stated that "I do find due diligence was made to find him [appellant] in the United States where we're capable of doing this."

5

## II. DISCUSSION

By a single issue, appellant argues the trial court erred in failing to dismiss the motion to adjudicate guilt because the State did not use due diligence in bringing him to face his adjudication of guilt.

Under *Peacock v. State*, 77 S.W.3d 285 (Tex. Crim. App. 2002), "a trial court's jurisdiction over a motion to revoke community supervision did not survive the expiration of the community supervision period unless (1) a motion to revoke was filed before the community supervision period expired, (2) an arrest warrant, capias, or summons was issued before the community supervision period expired, and (3) the State exercised due diligence in having a revocation hearing." *Wheat v. State*, 165 S.W.3d 802, 805 (Tex. App.–Texarkana 2005, pet. dism'd, untimely filed) (citing *Peacock v. State*, 77 S.W.3d 285, 287-88) (Tex. Crim. App. 2002)). In *Peacock*, the State's failure to execute a capias with due diligence was regarded as a plea in bar or defense, and the State bore the burden of proving "its due diligence once the defendant raised the issue." *Id.* (citing *Rodriquez v. State*, 804 S.W.2d 516, 517-18 (Tex. Crim. App. 1991)).

Thereafter, section 21(e) was added to article 42.12 of the Texas Code of Criminal Procedure "to extend the trial court's continuing jurisdiction to revoke community supervision after the expiration of the term of community supervision:" *Id.*; *see* Act of May 30, 2003, 78th Leg., R.S., ch. 250, §§ 2, 3, 2003 TEX. GEN. LAWS 1158 (codified at TEX. CODE CRIM. PROC. ANN. art. 42.12, §§ 21(e), 24 (Vernon Supp. 2010)); *see also Nurridin v. State*, 154 S.W.3d 920, 922-23 (Tex. App.–Dallas 2005, no pet.) A court retains jurisdiction to hold a hearing under subsection (b) and to revoke, continue, or

6

modify community supervision, regardless of whether the period of community supervision imposed on the defendant has expired, if before the expiration, the State's attorney filed a motion to revoke, continue, or modify community supervision and a capias is issued for the arrest of the defendant. *Wheat*, 165 S.W.3d at 805; *see* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 21(e); *see also Nurridin*, 154 S.W.3d at 924. This change eliminated the "due-diligence element" and "removed the broad, lack-of-due-diligence defense that had prevailed according to the prior caselaw." *Wheat*, 165 S.W.3d at 805; *see Nurridin*, 154 S.W.3d at 924.

The Legislature also added section 24 to article 42.12, "which gives back a limited affirmative defense of lack of due diligence." *Wheat*, 165 S.W.3d at 805. The *Wheat* court stated that:

> [f]or the purposes of a hearing under Section . . . 21(b), it is an affirmative defense to revocation *for an alleged failure to report to a supervision officer as directed or to remain within a specified place* that a supervision officer, peace officer, or other officer with the power of arrest under a warrant issued by a judge for that alleged violation *failed to contact or attempt to contact the defendant in person at the defendant's last known residence address or last known employment address*, as reflected in the files of the department serving the county in which the order of community supervision was entered.

*Id.* at 805-06 (citing TEX. CODE CRIM. PROC. ANN. art. 42.12, § 24) (emphasis added); *see Nurridin*, 154 S.W.3d at 923.

In light of these amendments, due diligence is "an affirmative defense applicable only to the grounds of revocation alleging failure to report or failure to remain in a specified location." *Wheat*, 165 S.W.3d at 806; *see Nurridin*, 154 S.W.3d at 924.

7

In this case, the trial court found that appellant violated his probation because he "did not report as instructed." Accordingly, the affirmative defense of due diligence would apply to this ground of revocation. *See Wheat*, 165 S.W.3d at 806; *Nurridin,* 154 S.W.3d at 904. However, the trial court also found that appellant violated his probation in three other ways; i.e., (1) "he did not, within ten days, inform the probation department that he had been arrested again," (2) "did not avoid persons and places of disreputable or harmful character," and (3) "he was arrested for a new offense" of capital murder. Under the current state of the law, the affirmative defense of due diligence was not applicable to all of the State's allegations, but only those alleging appellant's failure to report or remain. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12 § 24; *see also Wheat*, 165 S.W.3d at 805-06; *Nurridin*, 154 S.W.3d at 924. The sole issue for review is overruled.

## III. CONCLUSION

We affirm the trial court's judgment.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
16th day of December, 2010.

8