NUMBER 13-10-106-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

JAVIER CISNEROS
CAMPOS,                                               Appellant,

 

v.

 

THE STATE OF TEXAS,                         
                             Appellee.

                                                                                                                     
  

 

On appeal from the
103rd District Court 

of Cameron County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Justices
Garza, Benavides, and Vela  

Memorandum Opinion by
Justice Vela

                                                                                                                                    

A Cameron County grand jury indicted
appellant, Javier Cisneros Campos, for possession of less than twenty-eight
grams of cocaine.  He pleaded guilty and received five years’
deferred-adjudication probation, beginning July 14, 1992.  Following an adjudication
hearing, the trial court adjudicated him guilty and sentenced him to twenty
years’ imprisonment.  By one issue, appellant argues the trial court erred in
failing to dismiss the motion to adjudicate guilt because the State did not use
due diligence to bring him to face his adjudication of guilt.  We affirm.

I. Procedural History

            On August 25, 1993, the State filed a motion
for adjudication of guilt, alleging appellant violated various conditions of
his probation.  Following a hearing, the trial court continued him on
probation.  On September 22, 1995, the State filed a second motion for adjudication
of guilt, alleging appellant violated eight conditions of his probation,
including an allegation that he committed capital murder on April 24, 1995.  On
October 9, 1995, the trial court ordered the clerk to issue a capias,
commanding the sheriff to arrest appellant so that he could answer the
allegations in the second motion for adjudication of guilt.

            On August 6, 1999, the trial court signed an
order to show cause, directing the State to (1) show cause why the trial court
should not dismiss the second motion for adjudication of guilt for want of
prosecution, and (2) present evidence regarding “all diligence heretofore used
to effect the arrest of [appellant] herein to answer to the Motion.”  In two
letters addressed to the trial court, Blanca Castaneda, a Cameron County
community supervision officer, stated she had contacted the Florida Highway
Department, which reported that appellant was residing in Bonita Springs,
Florida and that he had obtained a valid driver’s license until the year 2000. 
Castaneda stated this information was forwarded to the Cameron County Sheriff’s
Department.

On March 1, 2004, the trial court signed
a second order to show cause, which contained the same directives as the first
order signed by the court.  In a letter addressed to the trial court dated
March 12, 2004, Castaneda informed the court that on August 2, 2001, Detective
Lucio of the Brownsville Police Department told her that he believed appellant
was in custody at the jail in Matamoros, Tamaulipas, Mexico, and wanted a copy
of appellant’s picture and fingerprints.  On August 5, 2002, Detective Lucio
told Castaneda that Mexican officials claimed appellant was furloughed and that
he never returned.  Castaneda also stated that on January 13, 2004, she
contacted appellant’s cousin, Ricardo Cisneros, who claimed appellant was
living in Mexico and hiding from Mexican officials.    

            On December 5, 2005, the trial court signed a
third order to show cause, which contained the same directives as the prior two
orders signed by the court.  In a letter addressed to the trial court dated
November 21, 2008, Connie Jaramillo, a Cameron County community supervision
officer, informed the court that on August 20, 2008, a home visit was conducted
at appellant’s previous address, but the new residents said they did not know
anybody by appellant’s name.  Jaramillo also stated that contact was made with
appellant’s friend, Abel Munoz, who claimed he had not seen appellant in
approximately fifteen years.  In a letter addressed to the trial court dated
January 4, 2010, Jaramillo advised that “[o]n November 19, 2008, the defendant
was extradited by Mexican Officials and is currently detained at the Olmito
County Jail.”

On January 14, 2010, the trial court
held a hearing on the second motion for adjudication of guilt.  Appellant
attended this hearing but did not testify.  Connie Jaramillo, the Cameron
County supervision officer assigned to appellant’s case, testified that the
probation department gave appellant “permission to go to the State of Florida,
and from then on, we didn’t know of him anymore.”  When the prosecutor asked
her about the efforts she made in trying to locate appellant, she said, “[W]e’ve
contacted references, done home visits.  At one point, we found out that he was
in the State of Florida, and we were having contact with some agents from the
State of Florida, which were also trying to locate him.”  She testified that
the Cameron County Probation Department listed appellant as an “absconder.”

            On cross-examination, when defense counsel
asked Jaramillo if the Cameron County Probation Department “use[d] due
diligence in sending a warrant to the Florida police to go down to . . .
[appellant’s Bonita Springs, Florida] address to see if [appellant] was there
and have him picked up?”, she said that the probation department forwarded the
information “[t]o our [Cameron County] sheriff’s office, and then I believe
they are the ones who sent the information to Florida.”  When asked, “[D]o you
have a means to check with the NCIC/TCIC[[1]]
computer to see if his [appellant’s] information has been placed in the
computer?”, she said, “Yes, we do.”  When asked “[a]nd did you do that?”, she
said, “Yes, we did.”  Jaramillo testified that on August 20, 2008, she made a
home visit to appellant’s last known address on Jennifer Avenue and found out
that appellant’s family no longer lived at that address.

            Samuel Lucio, a police officer with the
Brownsville Police Department, testified appellant told him that from April
1995 to the present time he had been in Mexico.  Officer Lucio testified that
“[t]he Mexican authorities turned him [appellant] over to our department.”

            The defense called David Martinez, who
testified that on April 24, 1995, he was with his brother and appellant outside
a home in Brownsville.  At that time, Martinez heard appellant fire “several
shots” from a rifle.  After the shooting, they left the scene and saw
appellant’s brother on a motorcycle.  Appellant left with his brother.  Two
days later, Martinez saw appellant in Matamoros.

            Connie Jaramillo testified for the defense
that she did not know when the warrant for appellant’s arrest was entered into
NCIC/TCIC.

After the trial judge heard the testimony,
she announced in open court that “I’m going to take judicial notice of the
Court’s file, . . . that tells me . . . that a warrant was, in fact, issued in
1995, and we know it was eventually placed in NCIC/TCIC.  I don’t have the
exact date of when it was placed in NCIC/TCIC, but I know a warrant was
active.”  The trial judge found that appellant violated the conditions of his
probation because he (1) “did not report as instructed,” (2) “did not, within
ten days, inform the probation department that he had been arrested again,” (3)
“did not avoid persons and places of disreputable or harmful character,” and
(4) “was arrested for a new offense, which is the capital murder offense.”  The
trial judge adjudicated appellant guilty and sentenced him to twenty years’
imprisonment.  The trial judge also stated that “I do find due diligence was
made to find him [appellant] in the United States where we’re capable of doing
this.”

 

 

II. Discussion

            By a single issue, appellant argues the trial
court erred in failing to dismiss the motion to adjudicate guilt because the
State did not use due diligence in bringing him to face his adjudication of
guilt.

Under Peacock v. State, 77 S.W.3d
285 (Tex. Crim. App. 2002), “a trial court's jurisdiction over a motion to
revoke community supervision did not survive the expiration of the community
supervision period unless (1) a motion to revoke was filed before the community
supervision period expired, (2) an arrest warrant, capias, or summons was
issued before the community supervision period expired, and (3) the State
exercised due diligence in having a revocation hearing.”  Wheat v. State,
165 S.W.3d 802, 805 (Tex. App.−Texarkana 2005, pet. dism’d, untimely
filed) (citing Peacock v. State, 77 S.W.3d 285, 287-88) (Tex. Crim. App.
2002)).  In Peacock, the State's failure to execute a capias with due
diligence was regarded as a plea in bar or defense, and the State bore the
burden of proving “its due diligence once the defendant raised the issue.”  Id.
(citing Rodriquez v. State, 804 S.W.2d 516, 517-18 (Tex. Crim. App.
1991)).

Thereafter, section 21(e) was added to
article 42.12 of the Texas Code of Criminal Procedure “to extend the trial court's
continuing jurisdiction to revoke community supervision after the expiration of
the term of community supervision:”  Id.; see Act of May 30,
2003, 78th Leg., R.S., ch. 250, §§ 2, 3, 2003 Tex.
Gen. Laws 1158 (codified at Tex.
Code Crim. Proc. Ann. art. 42.12, §§ 21(e), 24 (Vernon Supp. 2010)); see
also Nurridin v. State, 154 S.W.3d 920, 922-23 (Tex. App.−Dallas
2005, no pet.)  A court retains jurisdiction to hold a hearing under subsection
(b) and to revoke, continue, or modify community supervision, regardless of
whether the period of community supervision imposed on the defendant has
expired, if before the expiration, the State’s attorney filed a motion to
revoke, continue, or modify community supervision and a capias is issued for
the arrest of the defendant.  Wheat, 165 S.W.3d at 805; see Tex. Code Crim. Proc. Ann. art. 42.12,
§ 21(e); see also Nurridin, 154 S.W.3d at 924.  This change
eliminated the “due-diligence element” and “removed the broad,
lack-of-due-diligence defense that had prevailed according to the prior
caselaw.”  Wheat, 165 S.W.3d at 805; see Nurridin, 154 S.W.3d at
924.

The Legislature also added section 24 to
article 42.12, “which gives back a limited affirmative defense of lack of due
diligence.”  Wheat, 165 S.W.3d at 805.  The Wheat court stated that: 


[f]or the purposes of
a hearing under Section . . . 21(b), it is an affirmative defense to revocation
for an alleged failure to report to a supervision officer as directed or to
remain within a specified place that a supervision officer, peace officer,
or other officer with the power of arrest under a warrant issued by a judge for
that alleged violation failed to contact or attempt to contact the defendant
in person at the defendant's last known residence address or last known
employment address, as reflected in the files of the department serving the
county in which the order of community supervision was entered. 

 

Id. at 805-06 (citing Tex. Code Crim. Proc. Ann. art. 42.12,
§ 24) (emphasis added); see Nurridin, 154 S.W.3d at 923.  

In light of these amendments, due
diligence is “an affirmative defense applicable only to the grounds of revocation
alleging failure to report or failure to remain in a specified location.”  Wheat,
165 S.W.3d at 806; see Nurridin, 154 S.W.3d at 924.

 

In this case, the trial court found that
appellant violated his probation because he “did not report as instructed.” 
Accordingly, the affirmative defense of due diligence would apply to this
ground of revocation.  See Wheat, 165 S.W.3d at 806; Nurridin,
154 S.W.3d at 904.  However, the trial court also found that appellant violated
his probation in three other ways; i.e., (1) “he did not, within ten days,
inform the probation department that he had been arrested again,“ (2) “did not
avoid persons and places of disreputable or harmful character,” and (3) “he was
arrested for a new offense” of capital murder.  Under the current state of the
law, the affirmative defense of due diligence was not applicable to all of the
State's allegations, but only those alleging appellant’s failure to report or
remain.  See Tex. Code Crim.
Proc. Ann. art. 42.12 § 24; see also Wheat, 165 S.W.3d at 805-06;
Nurridin, 154 S.W.3d at 924.  The sole issue for review is overruled.

III. Conclusion

            We affirm the trial court’s judgment.

 

 

                                                                                         ROSE
VELA

                                                                                         Justice

 

Do not publish.

Tex.
R. App. P.
47.2(b).

 

Delivered and filed
the 

16th day of December,
2010.

 

 

 









[1]NCIC and TCIC stands for National
Crime Information Center and Texas Crime Information Center.