

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-24-00106-CR

_____

STAAR MONIQUE DOMINGUEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 69th District Court
Moore County, Texas
Trial Court No. 6072, Honorable Kimberly Allen, Presiding

February 25, 2025

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

In December 2021, pursuant to a plea agreement, Appellant, Staar Monique Dominguez, was placed on deferred adjudication community supervision for three years for the offense of possession of a controlled substance in an amount of less than one gram, a state jail felony.[1]  She was subsequently adjudicated guilty in October 2023 for violations of certain conditions of community supervision.  The trial court assessed

---

[1] TEX. HEALTH & SAFETY CODE ANN. § 481.115(b).

punishment at confinement for two years in a state jail facility, suspended in favor of community supervision for three years, plus a fine of $1,550.00. In February 2024, the State presented its second amended motion to revoke alleging Appellant had again violated certain terms of community supervision. At a hearing on the State's amended motion, Appellant entered a plea of not true to the allegations. After presentation of testimony, the trial court found all but one of the allegations to be true, revoked community supervision, and sentenced Appellant to twenty-four months in a state jail facility.

Appellant maintains her due process rights were violated because (1) the trial court abused its discretion in revoking community supervision given the nature of the allegations it found to be "true" and (2) the trial court failed to consider the full range of punishment by prejudging the sentence it would impose in the event of revocation. We affirm.

## BACKGROUND

Six months into Appellant's initial term of community supervision, the State moved to adjudicate guilt for alleged methamphetamine use on two different occasions. The trial court instead modified the conditions to include a treatment program and dismissed the State's motion. In May 2023, the State again sought adjudication for numerous violations, including positive tests for methamphetamine and attempting to falsify a drug test. Appellant's community supervision officer (CSO) testified Appellant continued to use methamphetamine while pregnant. She also testified Appellant had not completed any hours of community service and did not complete a drug offender education program.

2

Appellant's drug use resulted in CPS removing her other children from her care. The CSO recommended Appellant "do her time."

At that same hearing, a deputy testified he investigated Appellant's attempt to falsify a drug test. He described the device used—a sack containing liquid and a tube leading out—which is wrapped around the waist. He arrested her but the case was eventually dismissed.

Appellant testified she had completed some of her classes and programs. She worked as a home aide and was focusing on paying for housing and bills but hoped to eventually pay her delinquent fees. She denied using methamphetamine and explained the positive test result was because it lingered in her hair for months. When asked if she had beat her addiction, she answered "[y]es," reality had hit her, and she wanted to stay sober. She wanted to stay out of jail to avoid losing the baby she was expecting. She asked to remain on community supervision and declared she would follow the conditions and pay her fees. During cross-examination, however, she could not explain a positive test for methamphetamine one month before the hearing. She then admitted "I did it once," "I just messed up, I screwed up." She also admitted to attempting to falsify a drug test. She described her compliance with community supervision as being "so-so." In October 2023, based on the evidence, the trial court adjudicated Appellant guilty of the original offense and announced she would be rolled over to straight "probation" for three years.

Less than two weeks later, the State again moved to revoke community supervision. Three months later in January 2024, the State amended its motion. After a

continuance was granted due to Appellant's enrollment in rehab, a hearing was held in February 2024. At the conclusion of the hearing, the trial court found all but one of the State's allegations true, revoked community supervision, and assessed a sentence of confinement for twenty-four months.

## ISSUE ONE—DID THE TRIAL COURT ABUSE ITS DISCRETION?

Appellant maintains the trial court violated her due process rights and abused its discretion by relying on "de minimis" "hyper-technical interpretations" of the conditions of community supervision. We disagree.

When reviewing an order revoking community supervision, the appellate standard of review is whether the trial court abused its discretion. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013) (citing *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006)). In a revocation proceeding, the State must prove by a preponderance of the evidence that a defendant violated a condition of community supervision as alleged in the motion to revoke. *Cobb v. State*, 851 S.W.2d 871, 874 (Tex. Crim. App. 1993). In a revocation context, "a preponderance of the evidence" means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his [community supervision]." *Hacker*, 389 S.W.3d at 865 (citing *Rickels*, 202 S.W.3d at 764). The trial court abuses its discretion in revoking community supervision if, as to every ground alleged, the State fails to meet its burden of proof. *Cardona v. State*, 665 S.W.2d 492, 494 (Tex. Crim. App. 1984). Proof of a single violation is sufficient to support revocation. *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012).

4

In its second amended motion, the State alleged Appellant violated the following conditions of community supervision:

(a) failed to attend aftercare class on October 16, 2023;

(b) failed to maintain suitable employment for November 2023, December 2023, and January 2024;

(c) failed to remain in supervision county and was in Plainview without permission on November 10, 2023;

(d) failed to make court-ordered payments for December 2023 and February 2024;

(e) failed to attend aftercare class on November 13, 2023;

(f) failed to attend aftercare class on December 4, 2023; and

(g) failed to remain in the supervising county and was in Plainview on January 15, 2024.

Appellant's CSO testified that shortly after being continued on community supervision, Appellant missed her aftercare group meeting. The meetings are held only on Mondays and Appellant claimed she could not attend because she had a scheduled visitation with one of her children. The CSO advised her to contact CPS and reschedule visitation for a day other than Monday.

The counselor who conducted the aftercare meetings testified Appellant was required to attend a minimum of twelve meetings to comply with her conditions of community supervision. Participants are required to sign a log when they arrive to get credit for attending. The counselor also testified she keeps supervision officers advised on compliance by participants. She confirmed the meetings occur only on Monday

5

evenings. According to her, Appellant did not attend the meeting on October 16 because she reported she was grocery shopping. She missed two other meetings and reported her grandmother was ill on one date and she was ill on another date. On cross-examination, she testified Appellant participated during the meetings she attended and was showing improvement. But prior to completing rehab, Appellant was "not 100 percent invested" and was disruptive.

On November 13, 2023, Appellant was not in Dalhart as required. The CSO found out Appellant's husband had been shot and was being treated in Plainview. Appellant went to Plainview without permission and was arrested. In January 2024, Appellant called her CSO to report she had checked herself into a rehab in Plainview. The CSO was unaware the trial court had given Appellant permission to do so. Appellant completed that program.

The CSO testified Appellant had not reported any employment. During cross-examination, however, she admitted Appellant had no new admissions, no new offenses, and no failures to report.

A CPS caseworker testified Appellant was part of her caseload. She learned that Appellant was in jail in Plainview for violations of community supervision. She testified Appellant relapsed and tested positive for methamphetamine in September 2023 and January 2024. CPS changed the goal from reunification of the family to termination and unrelated adoption due to domestic violence and drug use. But Appellant then completed her services and provided certificates for completion of certain programs. When asked if Appellant was "trending in a positive" direction, the caseworker answered, "[y]es."

Appellant testified that dealing with community supervision was "a bit challenging." She acknowledged the requirement to follow the rules of community supervision but excused one missed aftercare group meeting because of visitation with one of her children. She excused another missed meeting by testifying she "didn't grocery shop fast enough." She missed another meeting when she went to Plainview to see her husband. She admitted she did not contact her CSO because she did not have her cell phone number or her email address.

Appellant acknowledged she relapsed and admitted herself into a rehab in Plainview. She completed a substance abuse residential treatment program. She conceded she did not have any prospects of employment and had no current patients to care for as a home aide.

The State argued Appellant continued to relapse and violate the conditions of community supervision. According to the State, Appellant continuously demonstrated an inability to comply with the conditions of community supervision and did not take responsibility for her relapses. The State requested that community supervision be revoked and argued for confinement for twenty-four months.

Defense counsel argued for continuation of community supervision. He claimed the history of the case was very "litigious" and Appellant was dealing with many different agencies including CPS but was showing improvement.

The trial court found six of the seven allegations true but found paragraph (e) not true because Appellant was in jail and could not comply. The trial court imposed a sentence of twenty-four months confinement.

7

The gist of Appellant's assertion is that the trial court abused its discretion because she offered a "sufficient reason for bending the rules" as to each of the State's allegations. She maintains the trial court's exercise of discretion "should not be so broad as to swallow whole the purpose of probation." She argues she is being punished for failing to comply with technical conditions instead of being exonerated for her "real recovery." Because revocation involves a loss of liberty, the main issue in reviewing a court's exercise of discretion is whether the defendant was afforded due process. *Leonard v. State*, 385 S.W.3d 570, 577 (Tex. Crim. App. 2012).

Relying on *Leonard* and *Torres v. State*, 617 S.W.3d 95, 101 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd), Appellant contends her community supervision was wrongfully revoked because she offered an explanation for every violation. She asserts that she attempted to comply with "an impossible situation." We find *Leonard* and *Torres* inapposite.

In *Leonard*, the sole violation found to be true made compliance of a condition of community supervision subject to the discretion of a third party—a psychotherapist. Although the defendant was making satisfactory progress in a sex offender treatment program, the psychotherapist testified the defendant was discharged unsuccessfully because he had failed five polygraph examinations and was not being truthful. *Leonard*, 385 S.W.3d at 573. On appeal, the defendant's adjudication of guilt was reversed because the trial court's decision was based solely on a third party's exercise of discretion and polygraph results were unreliable evidence and therefore inadmissible. *Id.* at 583.

In *Torres*, the trial court had signed an order with a future discharge date releasing the defendant from SAFPF for successfully completing the program. *Torres*, 617 S.W.3d at 98. Before the discharge date, the defendant was unsuccessfully ousted from the program based on conclusory statements that he had not conformed to rules and regulations. *Id.* at 103. No evidence was presented on the source of the allegations and the State's witnesses had no personal knowledge of the alleged incidents prompting the defendant's discharge from SAFPF. *Id.* at 103–04.

In the underlying case, Appellant was required to attend twelve aftercare group meetings. The counselor who conducted the meetings testified Appellant missed at least three meetings. She had first-hand knowledge of Appellant's absences. She explained that compliance was measured by a log sheet which required a participant's signature. The counselor testified she would sit at a table and observe all participants sign the log sheet. It was then provided to the CSO. Appellant's absences and therefore, non-compliance, cannot be attributed to the discretion of the counselor. Appellant admitted one of her absences was due to her choice to shop for groceries. She did not prioritize her community supervision conditions. Simply put, she failed to attend all the required aftercare group meetings which was a condition of community supervision.

Appellant was also required to remain in the supervising county. She admittedly went to Plainview of her own accord although she believed she provided a justification for doing so—her husband's injury.

The trial court gave Appellant several opportunities to remain on community supervision by amending the conditions. Although she eventually completed certain

9

programs and complied with most of the conditions, she failed on certain conditions alleged by the State. "Bending the rules," albeit without malice, does not impose an obligation on the trial court to excuse her violations. Violations do not need to be tied to commission of a new offense, drug use, or failure to report. Proof of even a single "technical violation" is sufficient to support revocation. *Nurdin v. State*, 154 S.W.3d 920, 924 (Tex. App.—Dallas 2005, no pet.); *Scott v. State*, No. 07-15-00121-CR, 2016 Tex. App. LEXIS 8172, at *6 (Tex. App.—Amarillo July 28, 2016, no pet.) (mem. op., not designated for publication). Some of the violations of other conditions deemed "technical" (failure to attend aftercare group meetings, failure to remain in the county of supervision, and failure to make payments) did not involve third-party discretion and were nonetheless failures to comply with the requirements of community supervision. Unlike in *Leonard* and *Torres*, in which a third party exercised discretion to unsuccessfully discharge a defendant from a program based on inadmissible evidence, Appellant's violations are attributable to her voluntary non-compliance and not a third party's discretion. Unlike in *Leonard*, she had full control over her ability to comply with the conditions the State alleged she violated. *Cf. Leonard*, 385 S.W.3d at 576–77.

The *Leonard* Court acknowledged the court of appeals' suggestion that although polygraph results are inadmissible in a revocation hearing, a defendant's failure to take a court-ordered polygraph could be admissible at a revocation hearing. *Leonard*, 385 S.W.3d at 575. Appellant's failure to attend required meetings, failure to remain in the supervising county, and failure to pay fees were court-ordered requirements which did not involve third-party discretion. The State presented sufficient admissible evidence for the trial court to properly exercise its discretion. We conclude Appellant's due process

10

rights were not violated by the trial court's decision to revoke community supervision. Issue one is overruled.

**ISSUE TWO—DID THE TRIAL COURT CONSIDER THE FULL RANGE OF PUNISHMENT?**

Appellant contends her due process rights were violated by the trial court's refusal to consider the full range of punishment. We disagree.

At the adjudication hearing held in October 2023, after adjudicating Appellant guilty of the charged offense, the trial court made the following announcement:

> My two choices . . . I'm very tempted just to send you to State Jail for a year and to get you - - because I think that might wake you up. I mean, I have no doubt that if I continue you on probation or deferred adjudication, you're going to continue to use meth. You haven't really done anything. I mean, you used last month out of your own admission. There's nothing that you're doing that tells me that you're not going to continue to use. But if I send you to State Jail for twelve months, you're going to come back with no supervision and continue to use. So, I am going to roll you to straight probation for three years.

After adjourning, the court went back on the record and announced as follows:

> I neglected to state that on straight probation I have to give you a set sentence, and that sentence is two years which is the maximum I can do. So, if you violate your probation, I will be sending you to state jail for two years.

At the revocation hearing in 2024, the trial court found six of the State's allegations to be true and announced as follows:

> I mean, this was the contract you made with the State: that if you violated, you would serve your 24 months in State jail. You have violated your contract, so I sentence you to serve the 24 months in the State Jail Division of the Texas Department of Criminal Justice.

11

Appellant argues she did not have a contract with the State to serve twenty-four months if she violated the terms of community supervision; rather, it was the trial court that had imposed a twenty-four-month sentence when adjudicating guilt but which it suspended for three years. She asserts the trial court's comments at the revocation hearing show bias under *Brumit v. State*, 206 S.W.3d 639 (Tex. Crim. App. 2006).

In *Brumit*, a case of aggravated sexual assault of a child involving an open plea agreement, during sentencing, the trial judge called the defendant "the worst kind of predator" and referenced a case he had prosecuted involving the sexual assault and death of a child. He added, "[t]hat case made me think that anybody that ever harmed a child should be put to death." He pontificated further and hoped punishment would serve as a deterrent to the defendant and others and imposed a life sentence. *Id.* at 640–41. The Court of Criminal Appeals found the comments did not reflect bias, partiality, or failure to consider the full range of punishment. The Court distinguished *Brumit* from two cases involving partiality of the judge or imposition by a judge of a predetermined sentence. *Id.* at 645.

In *Jefferson v. State*, 803 S.W.2d 470, 471 (Tex. App.—Dallas 1991, pet. ref'd), the court of appeals reversed a sentence where the trial judge had promised to impose the maximum sentence for a violation of probation. The court reasoned the defendant was denied due process of law because the trial court's comment effectively excluded evidence relevant to punishment and precluded consideration of the full range of punishment. *Id.* at 472.

In *Earley v. State*, 855 S.W.2d 260, 262 (Tex. App.—Corpus Christi 1993, pet. dism'd), the trial judge warned the defendant the maximum punishment would be imposed if he violated the terms of probation. The court of appeals concluded that comment alone was insufficient to show imposition of a predetermined sentence; however, during sentencing the trial judge lamented it was unable to impose greater punishment. The court of appeals found the previous comment combined with the latter comment showed the trial judge had decided the case before listening to the evidence. *Id.* at 262–63.

Due process requires a neutral and detached hearing body or officer. *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). Absent a clear showing of bias, a trial court's actions will be presumed to be correct. *Brumit*, 206 S.W.3d at 645 (citing *Thompson v. State*, 641 S.W.2d 920, 921 (Tex. Crim. App. 1982)).

Here, the record does not demonstrate the trial court decided Appellant's punishment without considering the evidence. In fact, the trial court carefully considered the testimony and found one of the allegations to be not true. Throughout the years, Appellant was given great latitude to comply with the conditions of community supervision. After being adjudicated guilty, she was rolled to straight probation. The trial court granted her an extension to complete a rehab program. She was afforded multiple opportunities to complete her community supervision and despite some of her successes, she continued to violate some of the terms.

Appellant's criticism of the trial court's comments regarding a contract with the State can be regarded as a poor choice of words but the comments do not reflect bias. She also maintains the judge had previously stated it was considering a twelve-month

sentence. That comment, however, was made at the adjudication hearing where Appellant was given yet another opportunity to avoid confinement and another opportunity to attend rehab.

The trial court also commented at the adjudication hearing that if Appellant violated the conditions of community supervision, "I will be sending you to state jail for two years." In *Earley*, however, the appellate court determined such a comment alone was not sufficient to show imposition of a predetermined sentence. *Earley*, 855 S.W.2d at 262. In the underlying case, the trial court did not comment as in *Earley* that it hoped it could impose a greater sentence. *Id.*

Considering the history of Appellant's case, we see no indication of bias or imposition of a predetermined sentence. *See Phea v. State*, No. 07-13-00044-CR, 2014 Tex. App. LEXIS 8613, at *2 (Tex. App.—Amarillo 2014, no pet.) (mem. op., not designated for publication) (finding comments that the defendant would be required to serve "all day, every day, for two years" was nothing more than an admonishment of the potential consequences of failure to abide by the terms and conditions of community supervision and did not establish bias or a predetermined sentence). We conclude Appellant's due process rights were not violated. Issue two is overruled.

### REFORMATION OF JUDGMENT

This Court has the power to modify the judgment of the court below to make the record speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Appellate courts have the power to reform whatever the trial court could have corrected by a

14

judgment *nunc pro tunc* where the evidence necessary to correct the judgment appears in the record. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). That power is not dependent on the request of any party, nor does it turn on the question of whether a party objected in the trial court. *Montoya v. State*, No. 07-11-00492-CR, 2012 Tex. App. LEXIS 5543, at *9–10 (Tex. App.—Amarillo July 11, 2012, no pet.) (mem. op., not designated for publication).

A defendant's sentence must be orally pronounced in open court. TEX. CODE CRIM. PROC. ANN. art. 42.03, § 1(a); *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004). A fine is part of the sentence and must be orally pronounced in the defendant's presence at the time of sentencing. *Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011). When there is a conflict between the oral pronouncement of sentence and the sentence in the written judgment, the oral pronouncement controls. *Taylor*, 131 S.W.3d at 500.

In the underlying case, the trial court did not orally pronounce the fine at either the adjudication hearing or the revocation hearing. Thus, the $1,550.00 fine cannot stand. The judgment revoking community supervision is reformed to delete the fine.

The trial court is ordered to prepare and file a judgment *nunc pro tunc* reflecting the reformation and the trial court clerk is ordered to provide a copy of that judgment to the Institutional Division of the Texas Department of Criminal Justice and to this Court.

15

**CONCLUSION**

The trial court's *Judgment Revoking Community Supervision* is affirmed as modified.

Alex Yarbrough
Justice

Do not publish.